UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUDY O'NEIL,<br><br>    Plaintiff,<br><br>v.<br><br>CITY AND COUNTY OF SAN FRANCISCO, et al.,<br><br>    Defendants. | Case No. 17-cv-07190-JCS<br><br>**ORDER REGARDING MOTION TO STAY, MOTION TO STRIKE, STIPULATION, AND ADMINISTRATIVE MOTIONS TO FILE UNDER SEAL**<br><br>Re: Dkt. No. 114, 122, 123, 124, |

## I. INTRODUCTION

This case arises from the fatal 2017 shooting of Keita O'Neil. Defendants the City and County of San Francisco (the "City"), Edric Talusan, and Christopher Samayoa move to stay the case in light of criminal charges recently filed against Mr. Samayoa. Plaintiff Judy O'Neil—Keita O'Neil's mother—opposes a stay, in part based on the potential prejudice that delay would cause in light of her serious health issues. The Court held a hearing on December 11, 2020 and requested supplemental evidence regarding Ms. O'Neil's medical condition, which the parties have now provided. The parties have also filed a stipulation to extend discovery deadlines and the schedule for briefing and hearing dispositive motions. *See* dkt. 125. For the reasons discussed below, the Court grants a short continuance as follows:

(1) Ms. O'Neil shall disclose expert witnesses no later than January 29, 2021, Defendants shall disclose expert witnesses no later than February 15, 2021, rebuttal disclosures shall occur no later than March 1, 2021, and expert discovery will close March 8, 2021;

(2) If Mr. Samayoa is deposed, his deposition shall occur no later than April 28, 2021, and the parties shall meet and confer to determine a deadline for supplemental expert reports after that deposition;

(3) Summary judgment and *Daubert* motions shall be filed no later than May 14, 2021, oppositions shall be filed no later than May 28, 2021, replies shall be filed no later than June 4, 2021, and a hearing will occur on July 2, 2021 at 9:30 AM;

(4) The pretrial conference is CONTINUED to October 1, 2021 at 2:00 PM, with all deadlines for pretrial filings continued accordingly;

(5) The jury trial (including jury selection) is CONTINUED to begin October 12, 2021, with further dates to be addressed at the next case management conference.

It appears likely that a further stay is not warranted, although full resolution of that question will require first resolving the objections raised in Defendants' motion to strike regarding Ms. O'Neil's medical evidence. The parties shall meet and confer to determine whether they can stipulate that the evidence presented by Ms. O'Neil is authentic and reflects the views of medical professionals familiar with her condition, and if so, shall file a stipulation to that effect no later than January 22, 2021. If Defendants are not satisfied that the evidence is authentic and accurately reflects Ms. O'Neil's medical condition, the parties shall file a joint notice to that effect no later than January 22, 2021, and Ms. O'Neil shall file further evidence, including at least one declaration by a medical professional familiar with her condition, no later than February 5, 2021.

A case management conference will occur on March 12, 2021 at 2:00 PM, in addition to the conference set for February 5, 2021. The parties shall file a joint case management statement no later than March 5, 2021.

Sufficient cause having been shown, the parties' administrative motions to file under seal (dkts. 122, 123) are GRANTED.

## II. BACKGROUND

On December 1, 2017, Defendant Samayoa, at the time an officer of the San Francisco Police Department, shot and killed Plaintiff Judy O'Neil's son Keita O'Neil. *See* Corrected Joint Case Management Statement (dkt. 33). The parties dispute whether the shooting was justified. *Id.* This case was filed on December 19, 2017. The Court did not initially set a trial schedule for the case, and Defendants have opposed setting such a schedule in light of potential criminal charges against the individual officer defendants. In November of 2019, the Court appointed a guardian ad

litem for Ms. O'Neil—her sister, April Green—due to medical issues that arose while the case was pending. *See* dkt. 89. In August of 2020, the Court set a schedule for the case over Defendants' objections, with fact discovery to close December 31, 2020, dispositive motions to be heard April 2, 2021, and trial to begin July 12, 2021. *See* dkt. 106. The San Francisco District Attorney has since filed criminal charges against Mr. Samayoa based on the shooting. Wilkinson Decl. (dkt. 114-2) ¶ 1.

Defendants move to vacate the trial date and stay the case indefinitely in light of the pending criminal case against Mr. Samayoa, because proceeding with this civil action would force Mr. Samayoa to choose between defending himself here and invoking his Fifth Amendment rights against self-incrimination in the criminal matter, and the City and Mr. Talusan could also be prejudiced in preparing their own defenses if Mr. Samayoa declines to testify. *See* Mot. to Stay (dkt. 114). According to Defendants, Ms. O'Neil faces minimal prejudice from a stay, and even regardless of the criminal case against Mr. Samayoa, the existing schedule for this case is unlikely to be feasible in light of the ongoing COVID-19 pandemic. *Id.* Mr. Samayoa's criminal defense attorney states that she intends to advise him to invoke the Fifth Amendment and decline to testify if he is called to do so in this civil action. Wilkinson Decl. ¶ 4.

Ms. O'Neil asserts that her "health has degenerated so much that she became mentally and physically incompetent and had to have a guardian ad litem appointed last year," and there is a serious risk "that she may not survive to the current trial date, much less moving and vacating the trial date indefinitely." Opp'n to Stay (dkt. 117) at 2. The parties agree that Ms. O'Neil's individual claims would not survive her if she died before trial. Ms. O'Neil contends that proceeding with parallel civil and criminal cases is permissible, that the prejudice to her of a stay outweighs the prejudice to Defendants of proceeding to trial, that previous statements by Mr. Samayoa about the shooting will be admissible as statements of a party opponent under Rule 802(d)(2) of the Federal Rules of Evidence even if he does not testify, and that it is possible Mr. Samayoa's criminal case could be resolved before the trial in this action. *See generally id.* Defendants respond that Ms. O'Neil failed to provide evidence of her medical condition, and that the pending criminal charges actually filed against Mr. Samayoa distinguish this case from others

3

where courts have proceeded with civil actions despite a defendant invoking the Fifth Amendment due to potential criminal exposure. *See generally* Reply (dkt. 118).

At the hearing on December 11, 2020, the Court invited a supplemental filing by Ms. O'Neil no later than December 24, 2020, and a responsive filing by Defendants no later than January 6, 2021. Ms. O'Neil submitted copies of medical records from October of 2019. *See* dkt. 120. Defendants filed a declaration by a medical expert stating that the medical records do not indicate that Ms. O'Neil would be expected to die before trial. *See* dkt. 122. Ms. O'Neil submitted additional medical evidence on December 30, 2020, *see* dkt. 123, which Defendants move to strike as untimely, insufficiently authenticated, and too vague to be useful, both as to Ms. O'Neil's condition and as to a particular doctor's familiarity with Ms. O'Neil, *see* Mot. to Strike (dkt. 124).

## III.  ANALYSIS

### A.  Legal Standard for Stay Due to Criminal Prosecution

"While a district court may stay civil proceedings pending the outcome of parallel criminal proceedings, such action is not required by the Constitution." *Fed. Sav. & Loan Ins. Corp. v. Molinaro*, 889 F.2d 899, 902 (9th Cir. 1989) (citations omitted). "A defendant has no absolute right not to be forced to choose between testifying in a civil matter and asserting his Fifth Amendment privilege." *Keating v. Office of Thrift Supervision*, 45 F.3d 322, 326 (9th Cir. 1995). Instead, a court must weigh factors including, in addition to "the extent to which the defendant's fifth amendment rights are implicated," the following:

> (1) the interest of the plaintiffs in proceeding expeditiously with this litigation or any particular aspect of it, and the potential prejudice to plaintiffs of a delay; (2) the burden which any particular aspect of the proceedings may impose on defendants; (3) the convenience of the court in the management of its cases, and the efficient use of judicial resources; (4) the interests of persons not parties to the civil litigation; and (5) the interest of the public in the pending civil and criminal litigation.

*Molinaro*, 889 F.2d at 903 (quoting *Golden Quality Ice Cream Co. v. Deerfield Specialty Papers, Inc.*, 87 F.R.D. 53, 56 (E.D. Pa. 1980), and citing, *e.g.*, *United States v. Kordel*, 397 U.S. 1, 11–12 (1970)). "[T]he extent to which the defendant's Fifth Amendment rights are implicated is a

significant factor for the [court] to consider, but it is only one consideration to be weighed against others." *Keating*, 45 F.3d at 326.¹

Whether to stay a civil case due to parallel criminal proceedings is left to the discretion of the district court, to be resolved as the interests of justice require. *Id.* at 324 (quoting *Sec. & Exch. Comm'n v. Dresser Indus.*, 628 F.2d 1368, 1375 (D.C. Cir. 1980)). Generally, "the strongest case for deferring civil proceedings until after completion of criminal proceedings is where a party under indictment for a serious offense is required to defend a civil or administrative action involving the same matter." *Dresser Indus.*, 628 F.2d at 1375–76.

### B. An Indefinite Stay Is Likely Not Warranted

This case presents a close call on whether to grant a stay. The substantial overlap in subject matter between Ms. O'Neil's claims here and the criminal charges against Mr. Samayoa, as well as the fact that Mr. Samayoa has already been charged and the potential for criminal liability is not merely speculative, tend to favor staying the case. *See, e.g.*, *McCormick v. Rexroth*, No. C 09-4188 JF, 2010 WL 934242, at *2 (N.D. Cal. Mar. 15, 2010); *Chao v. Fleming*, 498 F. Supp. 2d 1034, 1037 (W.D. Mich. 2007). Defendants are, of course, correct that they face at least some prejudice in defending against Ms. O'Neil's civil claims as a result of Mr. Samayoa's intent to decline to testify based on his Fifth Amendment right against self-incrimination, although other evidence—including Mr. Samayoa's past statements about the shooting and Mr. Talusan's testimony—would remain available to them.

On the other hand, Ms. O'Neil has already waited years for a trial in this case, and now faces serious health problems including dementia, heart problems, and other physical impairments. *See, e.g.*, Green Decl. (dkt. 117-3) ¶ 5.² As an elderly person in what appears to be very poor

---

¹ Other factors that may weigh in favor of a stay include the potential of the civil case to "expand rights of criminal discovery beyond the limits of Federal Rule of Criminal Procedure 16(b), expose the basis of the defense to the prosecution in advance of criminal trial, or otherwise prejudice the case." *Sec. & Exch. Comm'n v. Dresser Indus., Inc.*, 628 F.2d 1368, 1376 (D.C. Cir. 1980). Mr. Samayoa has not argued here that proceeding with this civil case would prejudice his *criminal* defense in any way, only that he and the other defendants will face undue prejudice in their ability to defend the *civil* case as result of Mr. Samayoa invoking the right against self-incrimination that attaches to his criminal prosecution.

² Much of the evidence addressing Ms. O'Neil's medical condition has been filed under seal, and the Court will not recount the details of those sealed records in this public order.

health, there is a real risk that she could die before trial if this case is stayed until the conclusion of Mr. Samayoa's criminal case, even if the evidence in the record comes short of predicting the likelihood of Ms. O'Neil's death on any particular timeline. The parties agree that at least some of Ms. O'Neil's claims would not survive her if she were to die before trial. Accordingly, while less certain than the prejudice that Defendants would suffer from proceeding without Mr. Samayoa's testimony, the harm Ms. O'Neil would suffer if she does not live to see trial would be more complete: she would lose any potential to obtain redress for herself, and some of her claims would be lost even to her estate.

The interests of managing the Court's calendar and efficient use of judicial resources favor denying a stay. The Court has an interest in expeditious resolution of cases before it, and this case has been pending for several years. Under the circumstances of this case, however, the Court's interest in clearings its docket carries relatively little weight as compared both to Defendants' interest in presenting a thorough defense and to Ms. O'Neil's interest in seeing claims based on her son's death adjudicated while she is alive.

The public interest also sheds little light on the outcome. The public has an interest in seeing justice done, but aspects of that interest weigh for both sides. A fair criminal trial of Mr. Samayoa, expeditious resolution of claims seeking to hold police officers accountable for an allegedly unjustified killing, and a full and fair defense of those claims by officers who assert that they acted properly in defense of themselves or others are all matters of public interest. While this case has considerable public importance, the public's interest tends to overlap with the interests of parties on both sides, and does not significantly alter the balance.

The ongoing COVID-19 pandemic further complicates matters. As Ms. O'Neil notes, her age and health condition put her at particular risk from that disease, although the distribution of vaccines to high-risk individuals now underway could mitigate that risk. As Defendants note, restrictions on indoor gatherings might well prevent a jury trial from taking place on the current schedule even if the Court declines to grant a stay based on Mr. Samayoa's criminal prosecution.

Weighing these considerations against one another, the Court concludes that a relatively short continuance is warranted in order to increase the likelihood of trial proceeding on schedule,

6

and to allow for the possibility that Mr. Samayoa might be able to offer testimony if his criminal case concludes more quickly than expected. If Ms. O'Neil's health is as poor as her recent filings suggest, however, an indefinite stay through the conclusion of Mr. Samayoa's prosecution would create an unacceptable risk of Ms. O'Neil's death before her claims can be tried.

Defendants' motion to strike raises legitimate concerns that Ms. O'Neil's most recent submission lacks both evidentiary rigor and a sufficient explanation of the relationship between Ms. O'Neil and the doctor who provided a letter regarding her health.[3] The Court has no reason to doubt that those documents accurately reflect Ms. O'Neil's health and expects that the parties can resolve those objections. Nevertheless, absent agreement of the parties, the Court will not resolve the motion to stay based on documents that fail to meet basic standards of evidence and foundation. The parties are therefore ORDERED to meet and confer to determine whether Ms. O'Neil's counsel can assure Defendants of the authenticity and foundation of the medical evidence they provided. If so, the parties shall file a stipulation to that effect, withdrawing Defendants' motion to strike, no later than January 22, 2021. If the parties are not able to reach an agreement, they shall file a joint notice so stating by the same date, and Ms. O'Neil shall file further evidence, including at least one declaration by a medical professional familiar with her condition, no later than February 5, 2021. The Court takes the motion to strike and motion to stay under advisement pending resolution of those issues.

## IV.   CONCLUSION

The Court GRANTS a continuance as stated above, GRANTS the parties' administrative motions to file under seal, and takes under advisement Defendants' motion to stay and motion to

/ / /

/ / /

/ / /

---

[3] The Court will not strike that filing on account of its tardiness. While Ms. O'Neil's attorneys could and should have taken steps to gather and submit medical evidence *before* the hearing on Defendants' motion to stay, and should have sought a stipulation or the Court's leave before filing additional documents after the deadline, they have provided a sufficient explanation of their inability to obtain this evidence after the hearing within the time originally allowed.

strike. The parties shall meet and confer as discussed above.

**IT IS SO ORDERED.**

Dated: January 12, 2021

_____
JOSEPH C. SPERO
Chief Magistrate Judge