**JOHN L. BURRIS, ESQ., SBN 69888**
LAW OFFICES OF JOHN L. BURRIS
Airport Corporate Center
7677 Oakport Street, Suite 1120
Oakland, CA 94621
Telephone: (510) 839-5200
Email: John.Burris@johnburrislaw.com

**ADANTÉ D. POINTER, ESQ., SBN 236229**
**PATRICK BUELNA, ESQ., SBN 317043**
POINTER & BUELNA, LLP
LAWYERS FOR THE PEOPLE
Well Fargo Center
1901 Harrison St., Suite 1140
Oakland, CA 94612
Tel: (510) 929-5400
Email: APointer@LawyersFTP.com
Email: PBuelna@LawyersFTP.com

**MELISSA C. NOLD, Esq. SBN 301378**
**NOLD LAW**
Russo Building
521 Georgia Street
Vallejo, California 94590
Telephone: (707)644-4004
melissa@noldlaw.com

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| JUDY O'NEIL,<br><br>        Plaintiff,<br><br>v.<br><br>CITY AND COUNTY OF SAN FRANCISCO, et al,<br><br>        Defendants. | Case No.: 3:17-cv-07190-JCS<br><br>**PLAINTIFF'S NOTICE AND MOTION FOR PARTIAL SUMMARY ADJUDICATION OF HER EXCESSIVE FORCE AND NEGLIGENCE CLAIMS AGAINST DEFENDANTS CHRISTIAN SAMAYO AND CITY AND COUNTY OF SAN FRANCISCO**<br><br>**DATE:** July 2, 2021<br>**TIME:** 9:30 AM<br>**CRT:** Zoom Conference<br><br>HON. JOSEPH C. SPERO |

POINTER & BUELNA, LLP
LAWYERS FOR THE PEOPLE
1901 Harrison St., Ste. 1140,
Oakland, CA 94612
Tel: (510) 929 - 5400

REDACTED VERSION OF DOCUMENT(S) SOUGHT TO BE SEALED

i

1
2          **PLEASE TAKE NOTICE** that on **July 2, 2021** at **9:30 AM,** or as soon as this matter may be
3    heard in front of the Honorable Judge **Joseph C. Spero** in the United State District Court, Northern
4    District, San Francisco Division, Plaintiff Judy O'Neil will move for partial summary adjudication
5    against the Defendants as to the liability portion of the Fourth Amendment excessive force and
6    negligence claims pursuant to Federal Rules of Civil Procedure, Rule 56.
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

POINTER & BUELNA, LLP
LAWYERS FOR THE PEOPLE
1901 Harrison St., Ste. 1140,
Oakland, CA 94612
Tel: (510) 929 - 5400          REDACTED VERSION OF DOCUMENT(S) SOUGHT TO BE SEALED

ii

# **TABLE OF CONTENTS**

Table of Contents ............................................................................................................. iii

Table of Authorities ......................................................................................................... iv

I. Introduction ................................................................................................................... 1

II. Statement of Facts ....................................................................................................... 1

III. Argument..................................................................................................................... 7

    A. There Are No Existing Material Disputes Precluding Summary Judgment........................... 7

    B. No Rational Interpretation of the Undisputed Facts Could Find That Defendant Samayoa's Use of Deadly Force Was Objectively Reasonable…........................................................... 10

        1. The Government's Intrusion Was at the Highest Level ..…………………………... 11

        2. The Government's Interest for the Intrusion Under the Totality of the Circumstances.... 11

            a.  Immediacy of the Threat …………………………………………….……... 11

            b.  Severity of the Crime…………………………………………….…..…..……… 12

        3.  Balancing the Factors ……………………………..….……………………...….…… 12

    C.  The Supreme Court and Ninth Circuit Have Found Officers' Use of Deadly Force Unconstitutional as a Matter of Law Facing Much Greater Threats Than Keita Presented… 14

    D. Defendant Samayoa Acted Negligently as a Matter of Law………………………….….. 17

Conclusion ……………………………………………………………………………….. 20

POINTER & BUELNA, LLP
LAWYERS FOR THE PEOPLE
1901 Harrison St., Ste. 1140,
Oakland, CA 94612
Tel: (510) 929 - 5400

REDACTED VERSION OF DOCUMENT(S) SOUGHT TO BE SEALED

# **TABLE OF AUTHORITIES**

**Statutes**

Fed Rules of Civil Procedure 56 (a) and (e) ………………………………………….. 7

**Cases**

*A.K.H. by & through Landeros v. City of Tustin,* 837 F.3d 1005 (9th Cir. 2016) ………………… 11

*Alexander v. CareSource, 576 F.3d 551* (6th Cir. 2009) ……………………..………………… 8

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) …………………………………………… 7

*Anthoine v. Cent. Counties Consortium*, 605 F.3d 740 (9th Cir. 2010) .………………………… 9

*Bryan v. MacPherson*, 630 F.3d 805 (9th Cir. 2010) ……………………………………………… 11

*Carmen v. San Francisco Unified Sch. Dist.,* 237 F.3d 1026 (9th Cir. 2001) .………………… 8

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)……………………………………………………… 8

*Cisco Sys. v. Sheikh,* 2020 U.S. Dist. LEXIS 184463 (N.D. Cal. Oct. 2, 2020) ………………… 12

*Cruz v. City of Anaheim*, 765 F.3d 1076, 1078 (9th Cir. 2014)………………………………………16

*Curnow v. Ridgecrest Police*, 952 F.2d 321 (9th Cir. 1991)………………………………………… 14

*Deorle v. Rutherford*, 272 F.3d 1272 (2001) ……………………………………………......13

*Duran v. City of Douglas, Ariz.,* 904 F.2d 1372 (1990)………………………………………………17

*Duncan v. City of San Diego*, 401 F. Supp. 3d 1016, 1022 (S.D. Cal. 2019)………………………17

*Espinosa v. City & Cnty. of S.F.*, 598 F.3d 528 (9th Cir. 2010) ………………………………… 16

*Estate of Lopez v. Gelhaus*, 149 F.Supp.3d 1154 (9th Cir. 2016)………………………………… 16

*Glenn v. Washington Cnty.*, 673 F.3d 864 (9th Cir. 2011) ……………………………………… 10

*George v. Morris*, 736 F.3d 829 (9th Cir. 2013) …………………………………………………… 11

*Graham v. Connor*, 490 U.S. 386 (1989) ………………………………………………………… 10

*Hayes v. Cty. Of San Diego*, 57 Cal. 4th 62 (2013) …..…………………………………………… 18

*Illinois v. Wardlow*, 528 U.S. 119, 125 (2000)……………………………………………………… 13

*Jones v. UPS Ground Freight*, 683 F.3d 1283, 1294 (11th Cir. 2012)……………………………… 9

*Humphreys & Partners Architects, L.P. v. Lessard Design, Inc.*, 790 F.3d 532 (4th Cir. 2015) ……8

*Keenan v. Allan,* 91 F.3d 1275 (9th Cir. 1996) ..…………………………………………………… 12

*Kollin v. City of Tehachapi,* 2020 U.S. Dist. LEXIS 101995 (E.D. Cal. June 10, 2010) ………….. 9

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986)………………………… 12

*Miller v. Clark Cnty.*, 340 F.3d 959 (9th Cir. 2003) …………………………………………........ 11

*Moore v. City & Cty. of San Francisco*, 2020 WL 7260530 (N.D. Cal. Dec. 10, 2020)…………….17

*Munoz v. Olin*, 24 Cal. 3d 629, 624 (1979)…………………………………………………….…18

*Nationwide Life Ins. Co. v. Richards*, 541 F.3d 903 (9th Cir. 2008)……………………………… 8

*Nunez v. Santos*, 427 F.Supp.3d 1165 (Dec. 13, 2019)…………………………………………… 17

*Scott v. Harris*, 550 U.S. 372 (2007) ……………………………………………………………… 15

*SEC v. Colello*, 139 F.3d 674 (9th Cir. 1998) ……………………………………………………… 8

*Tennessee v. Garner*, 471 U.S. 1 (1985) ………………………………………………………… 10

*Tolan v. Cotton*, 572 U.S. 650 (2014)…………………………………………………………… 16

*United States v. $133,420.00 in US Currency*, 679 F.3d 629 (9th Cir. 2012) ……………………… 13

*Young Han v City of Folsom*, 695 Fed.Appx. 197 (9th Cir. 2017) …..…………………………… 18

POINTER & BUELNA, LLP
LAWYERS FOR THE PEOPLE
1901 Harrison St., Ste. 1140,
Oakland, CA 94612
Tel: (510) 929 - 5400

REDACTED VERSION OF DOCUMENT(S) SOUGHT TO BE SEALED

iv

# I.    INTRODUCTION

According to his field training officer, Defendant San Francisco Police Department Officer Christopher Samayoa, shot and killed Decedent Keita O'Neil while Keita was simply running past the patrol car and not posing a threat of serious bodily harm to anyone. Indeed, Defendant Samayoa's own body camera footage showed that he shot Keita in the throat as he ran by the passenger side of the patrol car, unarmed and not even looking at the officer.

Defendant Samayoa is being criminally prosecuted for his unlawful conduct. Accordingly, Samayoa has refused to provide sworn deposition testimony in this civil case and per the Court's order, cannot elect to do so at trial. The undisputed facts as established by his body camera footage and his supervisor's testimony demonstrates Defendant Samayoa violated Keita O'Neil's clearly established constitutional rights when he shot and killed him. Defendant Samayoa's supervisor, Defendant Edric Talusan, was so shocked by Samayoa's decision to shoot and kill Keita that he ripped the gun out of Samayoa's hand before Keita was searched or taken into custody. Defendant violated clearly established precedent indicating that you cannot shoot an unarmed fleeing suspect that poses no risk to others. There are no remaining material disputes prohibiting Partial Summary Judgment. As such, Summary Judgment must be granted for Plaintiff's Fourth Amendment and Negligence claims.

# II.    STATEMENT OF FACTS

## A.  Responding to the Call for Service

On December 1, 2017, Defendant Edric Talusan was assigned to to be Defendant Samayoa's field training officer. Defendant Samayoa had only been a field trainee for four days. (Declaration of Patrick Buelna [Buelna Decl.], at **Ex. 1** – Deposition of Edric Talusan [Talusan Depo], at pp. 53-54; 57).

POINTER & BUELNA, LLP
LAWYERS FOR THE PEOPLE
1901 Harrison St., Ste. 1140,
Oakland, CA 94612
Tel: (510) 929 - 5400          REDACTED VERSION OF DOCUMENT(S) SOUGHT TO BE SEALED

1

A priority call came over the police radio and reported that a lottery van was taken but that there were no weapons involved. (Talusan Depo, 57-59). Defendant Talusan was at the Bayview station when he heard the call. (Talusan Depo, 60). Defendant Talusan approached his sergeant and asked if he could respond to the call with his trainee, Defendant Samayoa. (Talusan Depo, 61).

While *en route* to respond to the call, Defendant Talusan heard the location of the suspected stolen lottery van and decided to drive to that location in order to assist in detaining the suspects. (Talusan Depo, 64-65). Defendant Talusan observed the white lotto van matching the description pass him at Gilman & Bayshore. (Talusan Depo, 70). Defendant Talusan activated his lights and sirens and drove Code 3 after the van. (Talusan Depo, 70-71). Beyond telling Defendant Samayoa to put out over the radio that they were in pursuit, Defendant Talusan had no conversation with his trainee. (*Id*.)

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

███████████

## B. Pursuit of the Suspect Vehicle

Defendant Talusan witnessed the white van run several stop signs and he continued to pursue the vehicle. (Talusan Depo, 72). The white lotto van entered the Doublerock housing projects. (Talusan Depo, 73-74). Defendant Talusan knew that there was at least one patrol car behind them and proceeded to follow the van into the housing project. (Talusan Depo, 74) Defendant Talusan knew that the Doublerock housing projects has only one vehicle entrance and exit. (Talusan Depo, 73-74).

POINTER & BUELNA, LLP
LAWYERS FOR THE PEOPLE
1901 Harrison St., Ste. 1140,
Oakland, CA 94612
Tel: (510) 929 - 5400

REDACTED VERSION OF DOCUMENT(S) SOUGHT TO BE SEALED

2

Defendant Talusan saw the van make contact with a parked car as it turned into a deadend, and expected Keita O'Neil to get out of the van and run on foot. (Talusan Depo, 74). At this time, Defendant Talusan also told his trainee, Defendant Samayoa, **that he should expect a foot pursuit**. (Talusan Depo, 75).

## C. Shooting of Keita O'Neil[1]

As the van turned into the deadend, Defendant Talusan saw Keita O'Neil get out of the car while it was still moving and run in their direction. (Talusan Depo, 76). When Defendant Talusan saw Keita O'Neil get out of the vehicle, he did not draw his gun **nor did he instruct his trainee to draw his gun**. (Talusan Depo, 76-77).

Defendant Talusan testified that when Keita O'Neil exited the van, he considered it an attempt to flee which was consistent with what Keita had been doing up to that point – fleeing. (Talusan Depo, 78-79). Defendant Talusan testified that he was trained that he may use deadly force only when there is an immediate threat of seriously bodily harm to himself or another person. (Talusan Depo, 77). Defendant Talusan also testified that even when Keita O'Neil started running towards his patrol car, he did not believe that he was permitted to use deadly force:

**Q**. No, but I'm asking you, when you saw him running towards you, did you believe at that point you were permitted to use deadly force?

**A.** Myself, no. (Talusan Depo, 80:10-13).

Indeed, Defendant Talusan testifed that when he saw Keita O'Neil's hands they were empty and down by his sides as he ran towards Defendants. (Talusan Depo, 80-81). As Keita O'Neil was

---

[1] Plaintiff did not include any of Defendant Samayoa's prior statements in regards to the incident because he refused to provide sworn deposition testimony by the April 28, 2021 deadline (Doc. 127) and, per the Court's order, will be precluded from testifying at trial because he refused to testify at deposition by the deadline.

POINTER & BUELNA, LLP
LAWYERS FOR THE PEOPLE
1901 Harrison St., Ste. 1140,
Oakland, CA 94612
Tel: (510) 929 - 5400

REDACTED VERSION OF DOCUMENT(S) SOUGHT TO BE SEALED

running past the passenger side of the car Defendant Taluson heard the gunshot from Defendant Samayoa. (Talusan Depo, 84). At the time that Defendant Samayoa shot Keita, it was Defendant Talusan's plan to simply get out of the car and chase Keita. (Talusan Depo, 84-85).

Defendant Talusan testified that he kept his eyes on Keita O'Neil the entire time (Talusan Depo, 87) and did not see Keita do anything that would cause Samayoa to pull out his gun and shoot Keita:

Q. And you didn't see him do anything that would cause you to pull out your gun and shoot him, right?

A. No. (Talusan Depo, 87:24-88:1).

Defendant Talusan did not perceive Keita to be a threat of serious and immediate bodily harm to himself or anyone else, when Defendant Samayoa shot Keita. (Talusan Depo, 89). Defendant Talusan confirmed that when he heard the shot fired, Keita O'Neil was simply running past their vehicle and Defendant Talusan did not see any weapons. (Talusan Depo, 98-99):

Q. Turning back to when you heard the shot fired, what -- could you stand up and show me what you saw Mr. O'Neil doing right as you heard the shot fire?

A. He was running past our vehicle. (Talusan Depo 98:22-99:3).

Instead of checking Keita O'Neil for weapons or placing him in handcuffs, Defendant Talusan walked over to police trainee Defendant Samayoa and took his gun out his hands. (Talusan Depo, 106-107). Defendant Talusan took Defendant Samyoa's gun for not just Defendant Samayoa's safety, but the "safety of the people around him." (Talusan Depo, 108:22-109:10). Keita was completely unarmed and running away when Defendant Samayoa shot and killed him, as no guns or any weapons were recovered from him. (Talusan Depo, 95).

POINTER & BUELNA, LLP
LAWYERS FOR THE PEOPLE
1901 Harrison St., Ste. 1140,
Oakland, CA 94612
Tel: (510) 929 - 5400          REDACTED VERSION OF DOCUMENT(S) SOUGHT TO BE SEALED

4

████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████

### D. Video Evidence

There are two pieces of video evidence from the incident: a surveillance camera video (Buelna Decl., Ex. 2 – Surveillance Video [Surv Video] Zoom 2x) and Defendant Samayoa's body-worn camera which he turned on after he shot Keita O'Neil. (Ex. 3 – Samayoa Body Worn Camera [Samayoa BWC]). Fortunately, the Axon body camera captured and saved the 30 seconds preceding Defendant Samayoa clicking his body camera to start recording. (Talusan Depo, 85).

The surveillance camera shows the white van turning right into the dead end, Keita O'Neil getting out and then running past Defendants' car when Defendant Samayoa killed him. (Ex. 3).

Defendant Samayoa's body camera confirmed that Defendant Samayoa shot Keita O'Neil when he was unarmed, empty handed, had *already passed* Defendant Samayoa's door and *was not even looking at Defendants.* (Ex. 4 – Slowed to %25 Samayoa BWC; Ex. 5 – Still Frames of Samayoa BWC Nos. 420-430).



POINTER & BUELNA, LLP
LAWYERS FOR THE PEOPLE
1901 Harrison St., Ste. 1140,
Oakland, CA 94612
Tel: (510) 929 - 5400

REDACTED VERSION OF DOCUMENT(S) SOUGHT TO BE SEALED

5

1
2
3
4
5
6
7



8
9
10
11
12
13



14
15
16
17
18
19
20



21
22
23
24
25
26
27
28



POINTER & BUELNA, LLP
LAWYERS FOR THE PEOPLE
1901 Harrison St., Ste. 1140,
Oakland, CA 94612
Tel: (510) 929 - 5400   REDACTED VERSION OF DOCUMENT(S) SOUGHT TO BE SEALED

6







## III.   ARGUMENT

### A.  THERE ARE NO EXISITING MATERIAL DISPUTES PRECLUDING SUMMARY JUDGMENT

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). A material fact is one that could affect the outcome of the suit, and a genuine issue is one that could permit a reasonable jury to enter a verdict in the non-moving party's favor. *Anderson v. Liberty*

POINTER & BUELNA, LLP
LAWYERS FOR THE PEOPLE
1901 Harrison St., Ste. 1140,
Oakland, CA 94612
Tel: (510) 929 - 5400

REDACTED VERSION OF DOCUMENT(S) SOUGHT TO BE SEALED

7

*Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party moving for summary judgment bears the initial burden of establishing the absence of a genuine issue of material fact and can satisfy this burden by presenting evidence that negates an essential element of the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

Here, all available testimony has been put forth and there are absolutely no material disputes precluding summary judgment in Plaintiff's favor on her Fourth Amendment claim. Defendant Samayoa invoked his Fifth Amendment right against self-incrimination at his scheduled deposition. He refused to answer any questions about his killing of Mr. O'Neil. (Buelna Decl.) Once a party has invoked their Fifth Amendment privilege, they cannot offer any subsequent testimony on the matters to which they asserted the privilege. *See Cisco Sys. v. Sheikh,* 2020 U.S. Dist. LEXIS 184463 *1, *9 (N.D. Cal. Oct. 2, 2020); *see also, United States v. $133,420.00 in US Currency,* 679 F.3d 629, 641 (9th Cir. 2012); *Nationwide Life Ins. Co. v. Richards,* 541 F.3d 903, 915 (9th Cir. 2008). Furthermore, this Court may draw an adverse inference against Defendants because of Defendant Samayoa's invocation of the Fifth Amendment. *SEC v. Colello,* 139 F.3d 674, 677 (9th Cir. 1998) ("Parties are free to invoke the Fifth Amendment in civil cases, but the court is equally free to draw adverse inferences from their failure of proof.").

The trial court may ***only*** consider evidence on summary judgment if the submitting party can demonstrate that it would be possible to present the evidence in admissible form at trial. See *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986); *Humphreys & Partners Architects, L.P. v. Lessard Design, Inc.*, 790 F.3d 532, 538 (4th Cir. 2015); *see also Alexander v. CareSource, 576 F.3d 551, 558* (6th Cir. 2009) (submissions by party opposing summary judgment need not themselves be in form admissible at trial, but party "must show that she can make good on the promise of the pleadings by laying out enough evidence that will be admissible at trial to demonstrate that a genuine

POINTER & BUELNA, LLP
LAWYERS FOR THE PEOPLE
1901 Harrison St., Ste. 1140,
Oakland, CA 94612
Tel: (510) 929 - 5400                    REDACTED VERSION OF DOCUMENT(S) SOUGHT TO BE SEALED

8

issue on a material fact exists, and that a trial is necessary"); *Jones v. UPS Ground Freight*, 683 F.3d 1283, 1294 (11th Cir. 2012) ("The most obvious way that hearsay testimony can be reduced to admissible form is to have the hearsay declarant testify directly to the matter at trial"). Again, the submitting party bears the burden of showing that the evidence is admissible as presented, or that it could be presented in admissible form at trial. *See Humphreys*, supra 790 F.3d at 538-39.

Here, the Court set the deadline of April 28, 2021 for Defendant Samayoa to provide deposition testimony. (Court's Order re Deadlines, at Doc. 127, p. 1). Defendant Samayoa refused to provide deposition testimony and asserted his Fifth Amendment right to silence instead. Per the Court's order, Defendant Samayoa is now precluded from providing testimony at trial, and so any prior statements are irrelevant to the Court's analysis. But more importantly, there is incontrovertible video evidence of the incident that demonstrates Defendant Samayoa used excessive force when he killed Keita O'Neil as he was unarmed and running away from Defendant Samayoa.

"[W]here there is video evidence of the incident giving rise to the excessive force claim, a court must 'view the facts depicted by the videotape.'" *See Kollin v. City of Tehachapi,* 2020 U.S. Dist. LEXIS 101995 *1, *28 (E.D. Cal. June 10, 2010) (quoting *Scott v. Harris,* 550 U.S. 372, 380 (2007)). Defendant Samayoa's body camera footage and the still frames taken therefrom are undisputed and thus must be taken as true at the summary judgment stage. *See Anthoine v. Cent. Counties Consortium*, 605 F.3d 740, 745 (9th Cir. 2010).

The included pictures (Still Frames 420-430) are images captured from Defendant Samayoa's body camera footage and displayed in sequential order, showing the moments between Mr. O'Neil exiting the vehicle and Defendant Samayoa killing him. They show that Mr. O'Neil was running past Defendant Samayoa and did not look in the officers' direction as he ran. Instead, Keita was staring straight ahead. At the bottom of still frames 421 and 422 (**Ex. 4**), Mr. O'Neil's fingers are visible,

POINTER & BUELNA, LLP
LAWYERS FOR THE PEOPLE
1901 Harrison St., Ste. 1140,
Oakland, CA 94612
Tel: (510) 929 - 5400

REDACTED VERSION OF DOCUMENT(S) SOUGHT TO BE SEALED

9

showing an open hand with nothing in it; this can also be seen in the body camera footage. Indeed, Defendants' own reconstruction expert agreed that Keita's hand was empty and he was unarmed when Defendant Samayoa shot him. (Buelna Decl., **Ex. 5** – Rossetter Depo, 68).

Given Defendant Samayoa invoked the Fifth Amendment the only admissible evidence available for the court to consider is the body camera footage (including the corresponding still frames) and Defendant Talusan's testimony that he kept his eyes on Keita the entire time and never saw him do anything that justified deadly force. In light of the foregoing, there are no material disputes of fact remaining and the Court must find Defendant Samayoa used excessive force.

## B. NO RATIONAL INTERPRETATION OF THE UNDISPUTED FACTS COULD FIND THAT DEFENDANT SAMAYOA'S USE OF DEADLY FORCE WAS OBJECTIVELY REASONABLE

In evaluating a Fourth Amendment claim of excessive force, courts ask "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them." *Graham v. Connor,* 490 U.S. 386, 397 (1989). This inquiry "requires a careful balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Id.* at 396 (quoting *Tennessee v. Garner,* 471 U.S. 1, 8 (1985)). The Ninth Circuit applies a three-step process to determine reasonableness in use-of-force cases. *Glenn v. Washington Cnty.*, 673 F.3d 864, 871 (9th Cir. 2011).

First, the court must "assess the severity of the intrusion on the individual's Fourth Amendment rights by evaluating 'the type and amount of force inflicted.'" Id. (quoting *Espinosa v. City & Cnty. of S.F.*, 598 F.3d 528, 532 (9th Cir. 2010)). Second, the court must evaluate the government's interest in the use of force under the totality of the circumstances. *Glenn, supra*, 673 F.3d at 871 (citing *Graham*, 490 U.S. at 396). Third, the court must "balance the gravity of the

POINTER & BUELNA, LLP
LAWYERS FOR THE PEOPLE
1901 Harrison St., Ste. 1140,
Oakland, CA 94612
Tel: (510) 929 - 5400
REDACTED VERSION OF DOCUMENT(S) SOUGHT TO BE SEALED
10

intrusion on the individual against the government's need for that intrusion." *Glenn*, 673 F.3d at 871 (quoting *Miller v. Clark Cnty.*, 340 F.3d 959, 964 (9th Cir. 2003)).

### 1. The Government's Intrusion Was at the Highest Level

"The intrusiveness of a seizure by means of deadly force is ***unmatched***. The use of deadly force implicates the ***highest level*** of Fourth Amendment interests both because the suspect has a fundamental interest in his own life and because such force frustrates the interest of the individual, and of society, in judicial determination of guilt and punishment." *A.K.H. by & through Landeros v. City of Tustin,* 837 F.3d 1005, 1011 (9th Cir. 2016) *quoting Tennessee v. Garner,* 471 U.S. 1, 8 (1985) (internal quotations omitted) (emphasis added).

Here, Defendant Samayoa's intrusion is killing Keita as he ran past and away from Defendants Samayoa and Talusan while they were inside their police vehicle. Therefore, Defendant's intrusion is the highest level of intrusion conceivable in an excessive force inquiry.

### 2. The Government Interest for the Intrusion Under the Totality of the Circumstance

Next, the court must consider the government's interest for the intrusion under the totality of the circumstances. In *Graham*, the Supreme Court noted courts should consider such factors as (a) whether the suspect posed an immediate threat to the safety of the officer or others; and (b) whether the suspect was actively resisting arrest or attempting to evade arrest by flight. *Graham*, 490 U.S. at 396.

#### a. Immediacy of the threat

The Ninth Circuit has repeatedly stated that "the most important of these factors is whether the suspect posed an immediate threat to the safety of the officer or others." *George v. Morris,* 736 F.3d 829, 838 (9th Cir. 2013) quoting *Bryan v. MacPherson*, 630 F.3d 805, 826 (9th Cir. 2010) (internal quotations omitted).

POINTER & BUELNA, LLP
LAWYERS FOR THE PEOPLE
1901 Harrison St., Ste. 1140,
Oakland, CA 94612
Tel: (510) 929 - 5400

REDACTED VERSION OF DOCUMENT(S) SOUGHT TO BE SEALED

11

Here, the use of deadly force was not justified because all evidence indisputably established that Keita did not present an immediate threat of serious bodily harm to Defendant Samayoa or anyone else. Defendant Talusan himself testified that he did not perceive Mr. O'Neil to present such a threat at the moment he was shot. Indeed, Mr. O'Neil was running away from the officers and did not so much as look in the officers' direction as he ran past their vehicle. Moreover, Defendant Samayoa did not have any information that there were any weapons involved in stealing the van.

Furthermore, still frames taken from the footage of Defendant Samayoa's body-worn camera prove Mr. O'Neil's hand was open, well above his waist and visible to the officer. Thus, Defendant Samayoa had no basis to believe that Mr. O'Neil posed an immediate threat after he exited the vehicle and began running away. Further, Defendant Samayoa will be unable to present any testimony alleging alternate theories.

### b. Severity of the Crime

Mr. O'Neil was being pursued for the alleged theft of a state lottery vehicle. There were no allegations that Mr. O'Neil or anyone else involved used a weapon in the commission of the theft.

██████████████████████████████████████████████████████████

████████████████████████████████ Buelna Decl., Admin Mtn for Seal, **Ex. 2 -** CAD)

### 3. Balancing the Factors

Finally, the court must "balance the gravity of the intrusion on the individual against the government's need for that intrusion." *Glenn*, 673 F.3d at 871 (quoting *Miller,* 340 F.3d at 964).

As noted above, the intrusion of deadly force is "unmatched" and at the "highest level", where a government actor shoots and kills a citizen. Furthermore, the court must consider "not only when a seizure is made, but also how it was carried out" because even if an officer has probable cause to seize a suspect, it still may be unconstitutional to do so by using deadly force. *Garner,* 471 U.S. at 8,

POINTER & BUELNA, LLP
LAWYERS FOR THE PEOPLE
1901 Harrison St., Ste. 1140,
Oakland, CA 94612
Tel: (510) 929 - 5400          REDACTED VERSION OF DOCUMENT(S) SOUGHT TO BE SEALED

12

11. Here, Defendant Samayoa killed an unarmed man who was running away from him, in violation of longstanding law. He shot from inside the safety of his patrol vehicle, accompanied by another officer, and had backup behind them.

Although O'Neil was fleeing, the Supreme Court has repeatedly held that there may be no presumption of guilt to a crime simply because a person flees. *See Illinois v. Wardlow*, 528 U.S. 119, 125 (2000) (acknowledging that it is "undoubtedly true" "that there are innocent reasons for flight from police….")

In addition to the *Graham* factors, the Ninth Circuit considers the availability of less intrusive alternatives to the force employed and whether proper warnings were given. *See, e.g. Deorle v. Rutherford,* 272 F.3d 1272, 1282-83 (2001). There is no evidence that Defendant Samayoa gave Mr. O'Neil any commands or warned him that he would shoot. Defendant Samayoa also had a number of obvious and less intrusive options for bringing Mr. O'Neil into custody. He could have followed his training officer and supervisor's lead, Defendant Talusan, and got out of the car to simply chase Keita on foot. In the alternate, he could have allowed Mr. O'Neil to flee and called for backup, instructing them to set up a perimeter. Defendant Talusan also testified that they already had back up behind them which would have boxed Keita in, and surveillance camera footage showed precisely that – back up arriving within seconds. In addition, Defendant Samayoa could have easily used his car door to knock Mr. O'Neil to the ground as he ran past the car or a myriad of other less intrusive methods of capture. He did none of these things, instead unreasonably, unlawfully and needlessly he took Mr. O'Neil's life.

No reasonable jury balancing this intrusion and the way it was carried out against the countervailing government interests at stake would find that this was a reasonable use of deadly force. The Supreme Court has clearly stated that the Fourth Amendment prohibits the use of deadly

POINTER & BUELNA, LLP
LAWYERS FOR THE PEOPLE
1901 Harrison St., Ste. 1140,
Oakland, CA 94612
Tel: (510) 929 - 5400

REDACTED VERSION OF DOCUMENT(S) SOUGHT TO BE SEALED

13

force against an unarmed person fleeing officers. *See Tenn. v. Garner,* 471 U.S. 1, 11 (1985) ("Where the suspect poses no immediate threat to the officer and no threat to others, the harm resulting from failing to apprehend him does not justify the use of deadly force to do so.")

Defendant Talusan was in the same vehicle as Defendant Samayoa for the entire pursuit, and also saw Mr. O'Neil not only get out of the vehicle but also began running towards and past the officers' vehicle. Thus, Defendant Talusan was in a nearly identical position as Defendant Samayoa and testified under oath that he did not believe the use of deadly force was justified in that moment. He even took Defendant Samayoa's gun from him to protect any bystanders. There is perhaps no better evidence that a reasonable officer in Defendant Samayoa's position would not have used deadly force. As such, absent any remaining material disputes and since Defendant Samayoa's conduct violated clearly established law, Summary Judgment for Plaintiff is required.

## C. THE SUPREME COURT AND NINTH CIRCUIT HAVE FOUND OFFICERS' USE OF DEADLY FORCE UNCONSTITUTIONAL AS A MATTER OF LAW IN MUCH GREATER THREATS THAN KEITA PRESENTED

The law has been clearly established for over 35 years that a police officer may not use deadly force where the suspect poses no "immediate" threat to the officer or others. See *Tennessee v. Garner*, 471 U.S. 1, 11 (1985) ("Where the suspect poses no immediate threat to the officer and no threat to others, the harm resulting from failing to apprehend him does not justify the use of deadly force to do so."). "The most important" factor is "whether the suspect posed an immediate threat to the safety of the officers or others." *A.K.H. v. City of Tustin*, 837 F.3d 1005 (9th Cir. 2016).

Using this standard, both the Supreme Court and Ninth Circuit have made findings of constitutional violations of excessive force as a matter of law under sets of facts much more dangerous than those presented here.

In *Curnow v. Ridgecrest Police*, the Ninth Circuit found a constitutional violation of excessive force using the statement of a witness where officers were responding to a domestic violence suspect

POINTER & BUELNA, LLP
LAWYERS FOR THE PEOPLE
1901 Harrison St., Ste. 1140,
Oakland, CA 94612
Tel: (510) 929 - 5400
REDACTED VERSION OF DOCUMENT(S) SOUGHT TO BE SEALED
14

that was armed with a submachine gun. *Curnow v. Ridgecrest Police*, 952 F.2d 321 (9th Cir. 1991). In *Curnow*, the Ninth Circuit noted that, under the witnesses set of facts, the following occurred, Curnow was shot by police as he was holding the woman the police saw him slapping earlier, then Curnow got up, picked up his submachine gun and was running out of the house when the officers shot again and killed him. (Id. at 323). The Ninth Circuit court explained "the police officers could not reasonably have believed the use of deadly force was lawful because Curnow did not point the gun at the officers and apparently was not facing them when they shot him the first time." (Id. at 325). Thus, the Ninth Circuit concluded if a jury were to find the aforementioned facts were true, then a constitutional violation of excessive force would have occurred. (Id.)

Much like Mr. Curnow, here Mr. O'Neil was not facing the officers when he was shot, a fact evidenced by the undisputed footage from Defendant Samayoa's body-worn camera.

Unlike Mr. Curnow, however, Defendant Samayoa ***never*** saw Mr. O'Neil with any weapon (let alone a submachine gun) during the pursuit, and certainly did not in the moments before the Defendant unjustly killed him.

Also *unlike* Curnow, there are no disputed facts that O'Neil was running away unarmed and empty-handed. Under Defendants' best set of facts and the undisputed facts, O'Neil was running away empty-handed and unarmed when Defendant Samayoa shot him. The Court must accept these set of facts as true. *See*, *Anthoine*, 605 F.3d at 745. And compared to *Curnow*, where the Ninth Circuit found there was excessive force as a matter of law if the officers shot Curnow while he was running away with a submachine, the Court here is faced with a much less difficult finding of excessive force since it remains undisputed. Thus, he had remarkably less justification to use deadly force than the officers in *Curnow*, a shooting which the Ninth Circuit held was unconstitutional. *Curnow, supra,* at 325.

POINTER & BUELNA, LLP
LAWYERS FOR THE PEOPLE
1901 Harrison St., Ste. 1140,
Oakland, CA 94612
Tel: (510) 929 - 5400                    REDACTED VERSION OF DOCUMENT(S) SOUGHT TO BE SEALED

15

Indeed, in several fact scenarios involving suspects offering much more serious threats, included armed suspects, both the Ninth Circuit and Supreme Court have found constitutional violations of excessive force. *See Estate of Lopez v. Gelhaus*, 149 F.Supp.3d 1154 (9th Cir. 2016) (cert. denied) (finding it would be excessive force if deputy shot a young man carrying a BB gun that appeared identical to an AK-47 assault rifle and shot Mr. Lopez as he turned around with the barrel slightly raised); also *Tolan v. Cotton,* 572 U.S. 650 (2014) (Supreme Court found a constitutional violation where officer shot a young man running towards the officer who screamed "get your fucking hands off my mom" while officer was arresting the mom); *and also Cruz v. City of Anaheim*, 765 F.3d 1076, 1078 (9th Cir. 2014) (officers shot a man they pulled over for exiting his vehicle against orders and had learned prior to contact from a confidential informant that the man exiting the SUV was a convicted felon, carrying a pistol and made clear he did not intend to return to prison).

Unlike any of the cited cases, Mr. O'Neil offered none of the serious threats of being visibly armed, reported to have been armed or made any verbal statements to suggest he wanted to harm any officer. And yet, in each of the cited cases, the Appellate courts found a set of facts under which it was clearly established the officers used excessive force.

Plaintiff understands that the cited Supreme Court and Ninth Circuits cases were focused on overturning qualified immunity, and here Plaintiff is requesting summary judgment in her favor – but the analysis stands.

In overturning qualified immunity, the appellate courts were searching for sets of facts a jury could find for which it would be clearly established the officers used excessive force to deny qualified immunity. This serves two purposes: (1) the set of facts serve as notice to other law enforcement officers afterwards that the conduct is clearly established as unconstitutional; and (2) the

POINTER & BUELNA, LLP
LAWYERS FOR THE PEOPLE
1901 Harrison St., Ste. 1140,
Oakland, CA 94612
Tel: (510) 929 - 5400

REDACTED VERSION OF DOCUMENT(S) SOUGHT TO BE SEALED

16

set of facts illustrates the boundaries of the constitutional use of deadly force and define what will be considered excessive force as a matter of law from thereon.

If the best set of facts for Defendants (nonmoving party) still indicate a constitutional violation of excessive force as a matter of law, as exemplified by the set of facts under *Curnow, Lopez*, *Tolan*, and *Cruz*, then judgment should be entered in Plaintiffs' favor on the Fourth Amendment claim. *See also Nunez v. Santos*, 427 F.Supp.3d 1165 (Dec. 13, 2019) (affirming the jury verdict in plaintiffs' favor that found excessive force where officers shot and killed Anthony Nunez when he stepped out onto his front porch holding a gun, after repeatedly refusing to drop the gun).

And though Defendants are the non-moving party, this Court still may rely on them to "identify with reasonable particularity the evidence that precludes summary judgment." *Keenan*, 91 F.3d at 1279. And for this case, there is no evidence that suggests, or from which a jury, or this Court as a matter of law, that Defendant Samayoa used anything but *unreasonable* and *unconstitutional* deadly force.

Therefore, Plaintiff Judy O'Neil respectfully requests this Court GRANT her motion for partial summary adjudication on her Fourth Amendment claim for excessive force liability, and leave only the issue of damages for a jury to decide. *See Duran v. City of Douglas, Ariz.,* 904 F.2d 1372 (1990) (affirming the grant of partial summary judgment on Plaintiff's Fourth Amendment claim in his favor against an officer for liability and sending damages to jury trial); *See Duncan v. City of San Diego*, 401 F. Supp. 3d 1016, 1022 (S.D. Cal. 2019) (granting partial summary judgment on Plaintiff's Fourth Amendment claim for unlawful seizure); *see Moore v. City & Cty. of San Francisco*, No. 18-CV-00634-SI, 2020 WL 7260530 (N.D. Cal. Dec. 10, 2020) (granting plaintiff's motion for partial summary adjudication that officers' were in unlawful performance of their duties).

## D. DEFENDANT SAMAYOA ACTED NEGLIGENTLY AS A MATTER OF LAW

POINTER & BUELNA, LLP
LAWYERS FOR THE PEOPLE
1901 Harrison St., Ste. 1140,
Oakland, CA 94612
Tel: (510) 929 - 5400

REDACTED VERSION OF DOCUMENT(S) SOUGHT TO BE SEALED

17

"[P]ublic employees in California are statutorily liable to the same extent as private persons for injuries caused by their acts or omissions." *Hayes v. Cty. Of San Diego*, 57 Cal. 4th 622, 628-29 (2013). Thus, to support a negligence finding, a plaintiff must show that the defendant public employee had a duty to exercise due care, that he breached that duty, and that the breach was the proximate or legal cause of the resulting injury. *Id.* An officer's intentional shooting death of an individual may give rise to negligence liability where the officer failed to exercise due care. *Munoz v. Olin,* 24 Cal. 3d 629, 624 (1979). The California Supreme Court "has long recognized that peace officers have a duty to act reasonably when using deadly force." *Hayes,* 57 Cal. 4th at 629. And "[t]he reasonableness of an officer's conduct is determined in light of the totality of the circumstances." *Id.*

The California Supreme Court also reaffirmed long-standing precedent that when an officer's pre-shooting conduct did not cause the plaintiff any injury independent of the injury resulting from the shooting, negligence "liability can arise if the tactical conduct and decisions leading up to the use of deadly force *show*, as part of the totality of circumstances, that the use of deadly force was unreasonable." *Hayes,* 57 Cal.4th at 632. "In short, California recognizes that peace officers have a duty to act reasonably when using force, and reasonableness is determined in light of the totality of the circumstances, including consideration of tactical and pre-shooting actions." *Young Han v City of Folsom*, 695 Fed.Appx. 197, 198 (9th Cir. 2017).

In the previous sections of this motion, the unreasonableness of Defendant Samayoa's shooting of Mr. O'Neil has largely been framed within the very small amount of time between when Mr. O'Neil exited the vehicle and when Defendant Samayoa shot him. Even limiting the analysis to this time frame, Plaintiffs have demonstrated why the shooting was unreasonable—Defendant Samayoa had no reason to believe Mr. O'Neil was armed, Mr. O'Neil made no threatening gestures

POINTER & BUELNA, LLP
LAWYERS FOR THE PEOPLE
1901 Harrison St., Ste. 1140,
Oakland, CA 94612
Tel: (510) 929 - 5400

REDACTED VERSION OF DOCUMENT(S) SOUGHT TO BE SEALED

18

prior to being shot, and he did not even look in the officers' direction as he ran away from them. No reasonable interpretation of those facts could ever determine that Mr. O'Neil fulfilled his duty of exercising due care to Mr. O'Neil.

Expanding the analysis under California negligence law to include Defendant Samayoa's tactical conduct and pre-shooting actions only further demonstrates that this shooting was unreasonable.

In *Munoz*, the California Supreme Court found that an officer's use of deadly force on a fleeing suspect could be negligent when the officer instead could have continued to pursue the suspect with his vehicle. 24 Cal. 3d at 636-67. Defendant Samayoa clearly could have done that here, allowing Defendant Talusan to continue driving the vehicle while they pursued Mr. O'Neil while he ran on foot. The officers knew they had back-up officers coming to the scene who could assist in locating Mr. O'Neil without needing to resort to deadly force. This is but one in a series of flaws in Defendant Samayoa's pre-shooting conduct. Defendant Samayoa did not issue any commands to Mr. O'Neil prior to resorting to the use of deadly force. He did not appear to even consider using less-lethal force options, pulling out his gun before Mr. O'Neil had even stopped the car without any instruction from his training officer that he should do so.

California law is clear that an officer must act reasonably in the use of deadly force. Here, Defendant Talusan's testimony indicates that another officer in a nearly identical position as Defendant Samayoa did not believe the use of deadly force to be reasonable in the circumstances. The unreasonableness of Defendant Samayoa's killing of Mr. O'Neil is only further compounded when considering the pre-shooting tactics he employed. He did not issue any commands, confer with fellow officers, or attempt any other means of detaining Mr. O'Neil despite a variety of options available to him. No reasonable jury could interpret the evidentiary record to show that this amounts

POINTER & BUELNA, LLP
LAWYERS FOR THE PEOPLE
1901 Harrison St., Ste. 1140,
Oakland, CA 94612
Tel: (510) 929 - 5400

REDACTED VERSION OF DOCUMENT(S) SOUGHT TO BE SEALED

19

to due care, as it is clearly unreasonable. Accordingly, Plaintiff requests that this Court grant its motion for summary judgment as to its negligence claim under California state law.

## CONCLUSION

For the aforementioned reasons, Plaintiff respectfully requests this Court GRANT Plaintiff's motion for summary adjudication as to the liability portion of his claim against Defendants Samayoa and City and County of San Francisco and allow only the damages portion to go to jury trial.

Dated: May 14, 2021

**POINTER & BUELNA, LLP**

**LAWYERS FOR THE PEOPLE**

By: _/s/Patrick M. Buelna_
      PATRICK M. BUELNA
      Attorney for Plaintiff

POINTER & BUELNA, LLP
LAWYERS FOR THE PEOPLE
1901 Harrison St., Ste. 1140,
Oakland, CA 94612
Tel: (510) 929 - 5400

REDACTED VERSION OF DOCUMENT(S) SOUGHT TO BE SEALED

20