# EXHIBIT 5

IN THE UNITED STATES DISTRICT COURT

IN AND FOR THE NORTHERN DISTRICT OF CALIFORNIA

--o0o--

JUDY O'NEIL, individually )
and as successor-in-interest)
to Decedent KEITA O'NEIL, )
                              )
        Plaintiff, )
                              )
    vs.                )CASE NO.: 3:17-cv-07190-JCS
                              )
CITY AND COUNTY OF SAN )
FRANCISCO, a municipal )
corporation, et al. )
                              )
        Defendants. )
_____)    CERTIFIED COPY


VIDEOCONFERENCE

DEPOSITION OF ERIC ROSSETTER, Ph.D.

TUESDAY, MARCH 9, 2021

1:00 p.m. - 2:55 p.m.


REPORTED BY: Liliana Rodriguez, CSR NO. 13783

1

1  of him?
2      A.  Depends on what position he's in.
3      Q.  Do you know what position he was in?
4      A.  No.
5      Q.  What about, as an example, Frame 400, what would
6  Mr. Samayoa be able to see?
7      A.  Same thing.  You're going to see a lot of his
8  upper body, and there is the potential as he's moving
9  closer that you're going to start seeing his feet.
10     Q.  Do you know if he -- what sides he could see?
11  Front?  Side?  His back?  His left foot?  His right
12  foot?
13     A.  Depends on how he was positioned.
14     Q.  Do you know how he was positioned?
15     A.  No.
16     Q.  At 408 what portions of Mr. O'Neil would he be
17  able to see?
18     A.  Same answer as before.  It's going to be large
19  portion of his upper body.
20     Q.  Do you know if it would be the front, the side,
21  the left, or the right?
22     A.  No.  Except for, you know, there -- it's -- from
23  what we know about his movement is that Mr. O'Neil is
24  moving towards the police vehicle at this point.  So
25  through this motion, at some point you would likely see

66

1  some part of the front of Mr. O'Neil.
2      Q.   Which part?
3      A.   I can't be that specific.
4      Q.   Is it because you didn't know his exact
5  positioning?
6      A.   Correct.
7      Q.   And let's do when he's at green.  At 413 what
8  portions of Mr. O'Neil could defendant Samayoa see?
9      A.   Same estimate.  It's going to be, you know, a
10 decent portion of the head down to the sort of
11 mid-torso, maybe a little below.
12     Q.   Could you see his right hand?
13     A.   I don't know.
14     Q.   What about his left hand?
15     A.   Well, the only thing we know about hand position
16 is what we can see in the body cam.
17     Q.   What did that teach you, or what did that tell
18 you?
19     A.   That you can see one hand up, looks like it might
20 be pointed towards the front of the police vehicle in
21 the frames just before the shot is fired.
22     Q.   And can you tell if that's the left or the right
23 hand?
24     A.   It looked like it was the left hand.
25     Q.   I agree.

67

```
1          All right.  What about at 419?
2     A.   Same.  You're going to see head, neck, part of
3  the upper body at least.
4     Q.   Okay.  Would you be able to see his left hand?
5     A.   Well, you can obviously see his left hand because
6  you could see it in the body cam video and it's -- you
7  know, it's up and pointed towards the front of the
8  police vehicle.
9     Q.   Did you see anything in his left hand in the body
10 cam?
11    A.   In the left hand?  No.
12    Q.   Okay.  And we've already went through this.
13 Let's go back to your report.
14         All right.  Number 5, Mr. O'Neil moved toward --
15 we're at 5, right?
16         "Mr. O'Neil moved toward the police vehicle after
17 he exited the van."  That's your fifth opinion, right?
18    A.   Yes.
19    Q.   "The distance between Mr. O'Neil and Officer
20 Samayoa went from approximately 16.1 feet to 2.7 feet in
21 0.8 seconds from when Mr. O'Neil exited the van to when
22 Mr. Samayoa fired his weapon"; that's your seventh
23 opinion, right?
24    A.   Yes.  And you missed 6.
25    Q.   Oh, did I miss -- my bad.  Let me go back to 6,
```

68

```
1    STATE OF CALIFORNIA )
                         )
2    COUNTY OF FRESNO    )
```

3

4          I, LILIANA RODRIGUEZ, Certified Shorthand Reporter,

5    in and for the State of California, do hereby certify:

6          That the foregoing proceedings were taken before me

7    remotely at the time and place herein set forth; that

8    any witnesses in the foregoing proceedings, prior to

9    testifying, were duly sworn; that a record of the

10   proceedings was made by me using machine shorthand which

11   was thereafter transcribed under my direction; that the

12   foregoing is a true record of the testimony given.

13         Pursuant to Federal Rule 30(e), transcript review

14   was requested.

15         I further certify that I am neither financially

16   interested in the action, nor a relative or employee of

17   any attorney or party to this action.

18         IN WITNESS WHEREOF, I have this date subscribed my

19   name.

20

21   DATED:  3/30/2021

22           Fresno, California

23

24           __/s/Liliana Rodriguez_____
             LILIANA RODRIGUEZ, CSR No. 13783
25

```
 1                         WITNESS LETTER

 2      TO:  Eric Rossetter, Ph.D.           Date:  04.29.21
             Attn:  Hunter Sims, Deputy City Attorney
 3           Office of the City Attorney
             1390 Market St., 6th Floor      Depo:  03.09.21
 4           San Francisco, CA  94102        Ref.: #21030925B

 5      RE:  Judy O'Neil v. City and County San Francisco, et al.

 6      Dear Dr. Rossetter:

 7           Please be advised that the transcript of your
        deposition taken in the above matter has been completed
 8      and is now available at this office for your reading and
        signing.
 9           Please contact our office between the hours of 9:30
        a.m. and 4:30 p.m. Monday-Friday, to schedule an
10      appointment.  Or, if you prefer, contact the attorney to
        review and sign the copy of your deposition under
11      penalty of perjury.
             Read the transcript making any changes necessary.
12      In making any changes, please use the following guide:
             1. DO NOT WRITE on the original transcript.
13           2. SIGN UNDER PENALTY OF PERJURY at the end of the
                Deposition on the Declaration of Witness Page.
14           3. List each change on the Deposition Errata Sheet
                following this page. Signature is required at
15              the bottom of the Errata Sheet.
             4. Forward the signed Declaration of Witness Page
16              and signed Errata Sheet in addition to a copy of
                this letter to:
17                   Barbara J. Butler & Associates
                     Certified Court Reporters
18                   P.O. Box 3508, Santa Clara, CA  95055
                     (510) 832-8853 or (408) 248-2885.
19           Upon receipt of items requested in this letter, I
        will forward copies of same to all Counsel.
20           In the event you have not reviewed your deposition
        within 35 days or by trial date, whichever is sooner,
21      the original transcript will be sealed pursuant to
        applicable laws and thereafter mailed to the deposing
22      attorney.
                                  Sincerely,
23
                                  /s/Barbara J. Butler
24                                Barbara J. Butler, CSR

25      cc:  All Counsel
                                                             78
```