**EXHIBIT B**

**DECLARATION OF LT. PERA**

**IN SUPPORT OF DEFENDANTS'**

**MOTION FOR SUMMARY JUDGMENT**

## USE OF FORCE

The San Francisco Police Department's highest priority is safeguarding the life, dignity and liberty of all persons. Officers shall demonstrate this principle in their daily interactions with the community they are sworn to protect and serve. The Department is committed to accomplishing this mission with respect and minimal reliance on the use of force by using rapport-building communication, crisis intervention, and de-escalation tactics before resorting to force, whenever feasible. This Department General Order builds upon the Supreme Court's broad principles in *Graham* v. *Connor* (1989) 490 U.S. 386 and is more restrictive than the constitutional standard and state law. The Law Enforcement Code of Ethics requires all sworn law enforcement officers to carry out their duties with courtesy, respect, professionalism, and to never employ unnecessary force. These are key factors in maintaining legitimacy with the community and safeguarding the public's trust.

This order establishes policies and reporting procedures regarding the use of force. The purpose of the policy is to guide an officer's decisions regarding the use and application of force to ensure such applications are used only to effect arrest or lawful detentions or to bring a situation under legitimate control and assist the Department in achieving its highest priority. No policy can anticipate every conceivable situation or exceptional circumstance which officers may face. In all circumstances, officers are expected to exercise sound judgment and critical decision making when using force options. It is the policy of the Department to review rigorously every instance in which a firearm is discharged, including exceptional circumstances, on a case by case basis to evaluate all facts to determine if the discharge is within policy. See DGO 3.10.

I.    **POLICY**

      A.    SAFEGUARDING HUMAN LIFE AND DIGNITY. The authority to use force is a serious responsibility given to peace officers by the people who expect them to exercise that authority judiciously and with respect for human rights, dignity and life.

      B.    ESTABLISH COMMUNICATION. Communication with non-compliant subjects is often most effective when officers establish rapport, use the proper voice intonation, ask questions and provide advice to defuse conflict and achieve voluntary compliance before resorting to force options.

      C.    DE-ESCALATION. Officers shall, when feasible, employ de-escalation techniques to decrease the likelihood of the need to use force during an incident and to increase the likelihood of voluntary compliance. Officers shall when feasible, attempt to understand and consider the possible reasons why a subject may be noncompliant or resisting arrest. A subject may not be capable of understanding the situation because of a medical condition; mental, physical, or hearing impairment; language barrier; drug interaction; or emotional crisis, and have no criminal intent. These situations

may not make the subject any less dangerous, but understanding a subject's situation may enable officers to calm the subject and allow officers to use de-escalation techniques while maintaining public and officer safety. Officers who act to de-escalate an incident, which can delay taking a subject into custody, while keeping the public and officers safe, will not be found to have neglected their duty. They will be found to have fulfilled it.

D.   PROPORTIONALITY. When determining the appropriate level of force, officers shall, when feasible, balance the severity of the offense committed and the level of resistance based on the totality of the circumstances known to or perceived by the officer at the time. It is particularly important that officers apply proportionality and critical decision making when encountering a subject who is armed with a weapon other than a firearm.

E.   CRISIS INTERVENTION. When feasible, Crisis Intervention Team (CIT) trained officers shall respond to calls for service involving individuals in mental or behavioral health crisis pursuant to the CIT Department General Order 2016 version, or as amended.

F.   DUTY TO INTERVENE. When in a position to do so, officers shall intervene when they know or have reason to know, that another officer is about to use, or is using, unnecessary force. Officers shall promptly report any use of unnecessary force and the efforts made to intervene to a supervisor.

G.   FAIR AND UNBIASED POLICING. Members shall carry out their duties, including the use of force, in a manner that is fair and unbiased pursuant to Department General Order 5.17.

H.   VULNERABLE POPULATIONS. The use of force against vulnerable populations – including children, elderly persons, pregnant women, people with physical and mental disabilities and people with limited English proficiency – can undermine public trust and should be used as a last resort, when all other reasonable means have been exhausted.

## II.   DEFINITIONS:

A.   FEASIBLE. Capable of being done or carried out to successfully achieve the arrest or lawful objective without increasing risk to the officer or another person.

B.   IMMEDIATE THREAT. An immediate threat is considered to exist if a suspect has demonstrated actions that would lead one to reasonably believe that the suspect will continue to pose a threat if not apprehended without delay. A person is an immediate threat if the officer reasonably believes the person has the present intent, means, opportunity and ability to complete the threat regardless of whether the threatened action has been initiated.

C.   MINIMAL AMOUNT OF FORCE NECESSARY.  The lowest level of force within the range of objectively reasonable force that is necessary to effect an arrest or achieve a lawful objective without increasing the risk to others.

D.   PERSONAL BODY WEAPONS.  An officer's use of his/her body part, including but not limited to hand, foot, knee, elbow, shoulder, hip, arm, leg or head by means of high velocity kinetic energy transfer (impact) to gain control of a subject.

E.   REASONABLE FORCE.  An objective standard of force viewed from the perspective of a reasonable officer, without the benefit of 20/20 hindsight, and based on the totality of the circumstances known to or perceived by the officer at the time.

F.   REPORTABLE FORCE.  Any use of force which is required to overcome subject resistance to gain compliance that results in death, injury, complaint of injury in the presence of an officer, or complaint of pain that persists beyond the use of a physical control hold.  Any use of force involving the use of personal body weapons, chemical agents, impact weapons, extended range impact weapons, vehicle interventions, and firearms.  Any intentional pointing of a firearm at a subject.

G.   SERIOUS BODILY INJURY.  A serious impairment of physical condition, including but not limited to loss of consciousness, concussion, bone fracture, protracted loss or impairment of function of any bodily member or organ, a wound requiring extensive suturing, and serious disfigurement.

H.   VITAL AREAS OF THE BODY.  The head, neck, face, throat, spine, groin and kidney.

## III.   CONSIDERATIONS GOVERNING ALL USES OF FORCE

A.   USE OF FORCE MUST BE FOR A LAWFUL PURPOSE.  Officers may use reasonable force options in the performance of their duties, in the following circumstances:

1.   To effect a lawful arrest, detention, or search.
2.   To overcome resistance or to prevent escape.
3.   To prevent the commission of a public offense.
4.   In defense of others or in self-defense.
5.   To gain compliance with a lawful order.
6.   To prevent a person from injuring himself/herself.  **However, an officer is prohibited from using lethal force against a person who presents only a danger to himself/herself and does not pose an immediate threat of death or serious bodily injury to another person or officer**.

B.   USE OF FORCE EVALUATION.  The United States Supreme Court in *Graham* v. *Connor* (1989) 490 U.S. 386 held that an officer's use of force must be objectively reasonable under the totality of circumstances known to the officer at the time.  This General Order builds upon the broad principles in *Graham* by adding additional

factors upon which an officer's use of force shall be evaluated. This General Order is more restrictive than the constitutional standard and state law. Officers must strive to use the minimal amount of force necessary.

1. The reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than 20/20 hindsight, and without regard to the officer's underlying intent or motivation.

2. Factors for evaluating the use of force include but are not limited to:

   a. The severity of the crime at issue;
   b. Whether the suspect posed an immediate threat to the safety of the officers or others;
   c. Whether the suspect is actively resisting arrest or attempting to evade arrest by flight;
   d. Whether the use of force is proportional to the threat;
   e. The availability of other feasible, less intrusive force options;
   f. The officer's tactical conduct and decisions preceding the use of force;
   g. Whether the officer has reason to believe that the subject is mentally ill, has a physical, developmental or cognitive disability, is emotionally disturbed or is under the influence of alcohol or drugs;
   h. Whether there was an opportunity to warn about the use of force prior to force being used, and if so, was such a warning given;
   i. Whether there was any assessment by the officer of the subject's ability to cease resistance and/or comply with the officer's commands;
   j. Specialized knowledge, skills, or abilities of subjects;
   k. Prior contact;
   l. Environmental factors, including but not limited to lighting, footing, sound conditions, crowds, traffic and other hazards; and
   m. Whether the subject's escape could pose a future safety risk.

   Not all of the above factors may be present or relevant in a particular situation, and there may be additional factors not listed.

C. DE-ESCALATION. When encountering a non-compliant subject or a subject armed with a weapon other than a firearm, officers shall when feasible, use the following de-escalation tactics in an effort to reduce the need or degree of force:

1. Attempt to isolate and contain the subject;
2. Create time and distance from the subject by establishing a buffer zone (reactionary gap) and utilize cover to avoid creating an immediate threat that may require the use of force;
3. Request additional resources, such as Crisis Intervention Team (CIT) trained officers, Crisis/Hostage Negotiation Team, or Extended Range Impact Weapon;
4. Designate an officer to establish rapport and engage in communication with the subject;

5.  Tactically re-position as often as necessary to maintain the reactionary gap, protect the public, and preserve officer safety; and

6.  Continue de-escalation techniques and take as much time as reasonably necessary to resolve the incident, without having to use force, if feasible.

Other options, not listed above, may be available to assist in de-escalating the situation.

Supervisors who become aware of a situation where an officer is using de-escalation techniques shall monitor the radio communications and evaluate the need to respond to the scene.

D.  CRITICAL DECISION-MAKING MODEL.  Using a critical decision-making model, officers shall collect information, assess the threats and risk, consider police powers and the Department's policies, identify options and determine the best course of action, and review and re-assess the situation.

E.  UNLAWFUL PURPOSES.  Penal Code Section 149 provides criminal penalties for every public officer who "under color of authority, without lawful necessity, assaults or beats any person."  An assault and battery committed by officers constitute gross and unlawful misconduct and will be criminally investigated.

F.  SUBJECT ARMED WITH A WEAPON – NOTIFICATION AND COMMAND.  In situations where a subject is armed with a weapon, officers and supervisors shall comply with the following:

1.  OFFICER'S RESPONSIBILITY.  Upon being dispatched to or on-viewing a subject with a weapon, an officer shall call a supervisor as soon as feasible.

2.  SUPERVISORS' RESPONSIBILITIES.  When notified that officers are dispatched to or on-view a subject armed with a weapon, a supervisor shall as soon as feasible:

a.  Notify DEM, monitor radio communications, respond to the incident (e.g., "3X100, I'm monitoring the incident and responding.");

b.  Notify officers, absent a "Code 33" or other articulable reasons why it would be unsafe to do so, to use time, distance and/or other de-escalation tactics (as defined in Section III.C.1-6), if appropriate;

c.  Upon arrival, where appropriate, the supervisor shall assume command, and ensure appropriate resources are on-scene or are responding.

## IV.  LEVELS OF RESISTANCE.

A.  COMPLIANT.  Subject offers no resistance.

B.  PASSIVE NON-COMPLIANCE.  Does not respond to verbal commands but also offers no physical form of resistance.

C. ACTIVE RESISTANCE. Physically evasive movements to defeat an officer's attempt at control including bracing, tensing, running away, verbally or physically signaling an intention to avoid or prevent being taken into or retained in custody.

D. ASSAULTIVE. Aggressive or combative; attempting to assault the officer or another person, verbally or physically displays an intention to assault the officer or another person.

E. LIFE-THREATENING. Any action likely to result in serious bodily injury or death of the officer or another person.

## V. LEVELS OF FORCE.

Officers shall strive to use the minimum amount of force necessary to accomplish their lawful purpose.

A. LOW LEVEL FORCE. The level of control necessary to interact with a subject who is or displaying passive or active resistance. This level of force is not intended to and has a low probability of causing injury.

B. INTERMEDIATE FORCE. This level of force poses a foreseeable risk of significant injury or harm, but is neither likely nor intended to cause death. Intermediate force will typically only be acceptable when officers are confronted with active resistance and a threat to the safety of officers or others. Case law decisions have specifically identified and established that certain force options such as OC spray, impact projectiles, K-9 bites, and baton strikes are classified as intermediate force likely to result in significant injury.

C. DEADLY FORCE. Any use of force substantially likely to cause serious bodily injury or death, including but not limited to the discharge of a firearm, the use of an impact weapon under some circumstances, other techniques or equipment, and certain interventions to stop a subject's vehicle (see DGO 5.05, Response and Pursuit Driving.)

## VI. FORCE OPTIONS.

The force options authorized by the Department are physical controls, personal body weapons, chemical agents, impact weapons, extended range impact weapons, vehicle interventions, K-9 bites and firearms. These are the force options available to officers, but officers are not required to use these force options based on a continuum. While deploying a particular force option and when feasible, officers shall continually evaluate whether the force option may be discontinued while still achieving the arrest or lawful objective.

A. TOOLS AND TECHNIQUES FOR FORCE OPTIONS. The following tools and techniques are not in a particular order nor are they all inclusive.

- Verbal Commands/Instructions/Command Presence
- Control Holds/Takedowns
- Impact Weapons
- Chemical Agents (Pepper Spray, OC, etc.)
- K-9 Bite
- Vehicle Intervention (Deflection)
- Firearms
- Personal Body Weapons
- Impact Projectile

B.  PHYSICAL CONTROLS/PERSONAL BODY WEAPONS.  Physical controls, such as control holds, takedowns, strikes with personal body weapons, and other weaponless techniques are designed to gain compliance of and/or control over uncooperative or resistant subjects.

1.  PURPOSE.  When a subject offers some degree of passive or active resistance to a lawful order, in addition to de-escalation techniques and appropriate communication skills, officers may use physical controls consistent with Department training to gain compliance.  A subject's level of resistance and the threat posed by the subject are important factors in determining what type of physical controls or personal body weapons should be used.

2.  USE.  Officers shall consider the relative size and possible physical capabilities of the subject compared to the size, physical capabilities, skills, and experience of the officer.  When faced with a situation that may necessitate the use of physical controls, officers shall consider requesting additional resources to the scene prior to making contact with the subject, if feasible.  Different physical controls involve different levels of force and risk of injury to a subject or to an officer.  Some physical controls may actually involve a greater risk of injury or pain to a subject than other force options.

3.  PROHIBITED USE OF CHOKE HOLDS.  Officers are prohibited from using the following control holds:

a.  Carotid restraint;
b.  Choke hold--choking by means of pressure to the subject's trachea or other means that prevent breathing.

4.  MANDATORY MEDICAL ASSESSMENT.  Any subject who has been injured, complains of an injury in the presence of officers, or complains of pain that persists beyond the use of the physical control hold shall be medically assessed by emergency medical personnel.

5.  REPORTING.  Use of physical controls is a reportable use of force when the subject is injured, complains of injury in the presence of officers, or complains

of pain that persists beyond the use of a physical control hold.  Striking a subject with a personal body weapon is a reportable use of force.

C.    CHEMICAL AGENTS.  Chemical agents, such as Oleoresin Capsicum (OC) Spray, are designed to cause irritation and temporarily incapacitate a subject.

1.    PURPOSE.  Chemical agents can be used to subdue an unarmed attacker or to overcome active resistance (unarmed or armed with a weapon other than a firearm) that is likely to result in injury to either the subject or the officer.  In many instances, chemical agents can reduce or eliminate the necessity to use other force options to gain compliance, consistent with Department training.

2.    WARNING.  Officers shall provide a warning prior to deploying a chemical agent, if feasible:

a.    Announce a warning to the subject and other officers of the intent to deploy the chemical agent if the subject does not comply with officer commands; and
b.    Give the subject a reasonable opportunity to voluntarily comply unless it would pose a risk to the public or the officer, or permit the subject to undermine the deployment of the chemical agent.

3.    MANDATORY FIRST AID.  At the scene or as soon as possible, officers shall administer first aid by:

a.    Seating the subject or other person(s) exposed to a chemical agent in an upright position, and
b.    Flushing his/her eyes out with clean water and ventilate with fresh air.

4.    MANDATORY MEDICAL ASSESSMENT.  Any person exposed to a chemical agent shall be medically assessed by emergency medical personnel.  Any exposed person shall be kept under direct visual observation until he/she has been medically assessed.  If an exposed person loses consciousness or has difficulty breathing, an officer shall immediately request for emergency medical personnel, render first aid and monitor the subject until relieved by emergency medical personnel.  Officers shall notify dispatch to expedite emergency medical personnel if the person loses consciousness or has difficulty breathing.

5.    TRANSPORTATION.  Subjects in custody exposed to a chemical agent must be transported in an upright position by two officers.  The passenger officer shall closely monitor the subject for any signs of distress.  If the subject loses consciousness or has difficulty breathing, officers shall immediately seek emergency medical attention.  Hobble cords or similar types of restraints shall only be used to secure a subject's legs together.  They shall not be used to connect the subject's legs to his/her waist or hands or to a fixed object.

6.    BOOKING FORM.  Officers shall note on the booking form that the subject has been exposed to a chemical agent.

7.    REPORTING.  If an officer deploys a chemical agent on or near someone, it is a reportable use of force.

D.    IMPACT WEAPON.  Department issued and authorized impact weapons include the 26" straight wooden baton, the 36" straight wooden baton, the wooden or polymer Yawara stick, the 21' to 29" telescopic metal baton and the wooden bokken, and are designed to temporarily incapacitate a subject.

1.    PURPOSE.  An impact weapon may be used in accordance to Department training to administer strikes to non-vital areas of the body, which can subdue an assaultive subject who is actively resisting and poses a threat to the safety of officers or others.  Only Department issued or authorized impact weapons shall be used.  Officers may resort to the use of other objects as impact weapons, such as a flashlight or police radio, if exigent circumstances exist, and officers shall articulate in writing the reason for doing so.

2.    WARNING.  When using an impact weapon, an officer shall, if feasible:

a.    Announce a warning to the subject of the intent to use the impact weapon if the subject does not comply with officer's commands; and
b.    Give the subject a reasonable opportunity to voluntarily comply, except that officers need not do so where it would pose a risk to the public or the officer or permit the subject to undermine the use of the impact weapon.

3.    RESTRICTED USES.  Unless exigent circumstances exist, officers shall not intentionally strike vital areas, including the head, neck, face, throat, spine, groin or kidney.  The use of an impact weapon to a vital area has a likelihood of causing serious bodily injury or death, and the intentional use of an impact weapon to these areas shall only be used in situations where lethal force is justified.

4.    PROHIBITED USES.  Officers shall not:

a.    Use the impact weapon to intimidate a subject or person, such as slapping the palm of their hand with an impact weapon where neither the use of an impact weapon or impact weapon warning is appropriate.
b.    Strike a handcuffed prisoner who poses no threat.  This action is inappropriate and may result in disciplinary action and/or criminal prosecution.

5.    MANDATORY MEDICAL ASSESSMENT.  Any officer who strikes a subject with an impact weapon shall ensure the subject is medically assessed.

6.    REPORTING. If an officer strikes a subject with an impact weapon, it is a reportable use of force.

E.    EXTENDED RANGE IMPACT WEAPON (ERIW).  An Extended Range Impact Weapon (ERIW), such as a beanbag shotgun, is a weapon that fires a bean bag or other projectile designed to temporarily incapacitate a subject.  An ERIW is generally not considered to be a lethal weapon when used at a range of 15 feet or more.

1.    PURPOSE.  The ERIW may be used on a subject who is armed with a weapon, other than a firearm, that could cause serious injury or death.  This includes, but is not limited to, edged weapons and improvised weapons such as baseball bats, bricks, bottles, or other objects.  The ERIW may also be used in accordance with Department training to subdue an aggressive, unarmed subject who poses an immediate threat of serious injury to another person or the officer.

2.    USE.  The ERIW shall be properly loaded and locked in the shotgun rack of the passenger compartment of the vehicle.  Officers shall observe the following guidelines:

   a.    An officer deploying an ERIW shall always have a lethal cover officer. When more than one officer is deploying an ERIW, tactical judgment and scene management in accordance with Department training will dictate the appropriate number of ERIW and lethal cover officers.
   b.    The ERIW officer's point of aim shall be Zone 2 (waist and below).  The ERIW officer's point of aim may be Zone 1 (waist and above) if:

      i.    Zone 2 is unavailable; or
      ii.   The ERIW officer is delivering the round from 60 feet; or
      iii.  Shots to Zone 2 have been ineffective or in the officer's judgment a shot to zone 2 would be ineffective.

Officer shall articulate in writing the reason for intentionally aiming the ERIW at Zone 1.

   c.    The use of an ERIW to a vital area has a likelihood of causing serious bodily injury or death, and the intentional use of an ERIW to these areas shall only be used in situations where deadly force is justified.
   d.    The ERIW officer shall assess the effect of the ERIW after each shot.  If subsequent ERIW rounds are needed, the officer shall aim at a different target area.

3.    LIMITED USES.  The ERIW should not be used in the following circumstances (unless the use of deadly force is appropriate):

   a.    The subject is at the extremes of age (elderly and children) or physically frail.

    b.    The subject is in an elevated position where a fall is likely to cause serious injury or death.

    c.    The subject is known to be or appears pregnant.

    d.    At ranges of less than 15 feet.

4.    WARNING.  When using the ERIW, an officer shall, if feasible:

    a.    Announce to other officers the intent to use the ERIW by stating "Red Light! Less Lethal! Less Lethal!"

    b.    All other officers at scene to acknowledge imminent deployment of ERIW by echoing, "Red Light! Less Lethal! Less Lethal!"

    c.    Announce a warning to the subject that the ERIW will be used if the subject does not comply with officer commands;

    d.    Give the subject a reasonable opportunity to voluntarily comply unless it would pose a risk to the community or the officer, or permit the subject to undermine the deployment of the ERIW.

5.    MANDATORY MEDICAL ASSESSMENT.  Any subject who has been struck by an ERIW round shall be medically assessed by emergency medical personnel.

6.    BOOKING FORM.  Persons who have been struck by an ERIW round shall have that noted on the booking form.

7.    REPORTING.  Discharge of an ERIW is a reportable use of force.

F.    VEHICLE INTERVENTIONS.  An officer's use of a police vehicle as a "deflection" technique, creation of a roadblock by any means, or deployment of spike strips, or any other interventions resulting in the intentional contact with a noncompliant subject's vehicle for the purpose of making a detention or arrest, are considered a use of force and must be objectively reasonable under the circumstances.  The Department's policies concerning such vehicle intervention tactics are set forth in DGO 5.05, Response and Pursuit Driving.

G.    FIREARMS AND OTHER DEADLY FORCE.  It is the policy of this Department to use deadly force only as a last resort when reasonable alternatives have been exhausted or are not feasible to protect the safety of the public and police officers.  The use of firearms and other deadly force is the most serious decision an officer may ever make.  When safe and feasible under the totality of circumstances, officers shall consider other objectively reasonable force options before discharging a firearm or using other deadly force.

1.    HANDLING, DRAWING AND POINTING FIREARMS.

a. HANDLING FIREARMS. An officer shall handle and manipulate a firearm in accordance with Department-approved firearms training. An officer shall not manually cock the hammer of the Department-issued handgun to defeat the first shot double-action feature.

b. AUTHORIZED USES. An officer may draw, exhibit or point a firearm in the line of duty when the officer has reasonable cause to believe it may be necessary for the safety of others or for his or her own safety. When an officer determines that the threat is over, the officer shall holster his or her firearm or shoulder the weapon in the port arms position pointed or slung in a manner consistent with Department approved firearms training.

c. DRAWING OTHERWISE PROHIBITED. Except for maintenance, safekeeping, inspection by a superior officer, Department-approved training, or as otherwise authorized by this order, an officer shall not draw a Department issued firearm.

d. POINTING A FIREARM AT A PERSON. The pointing of a firearm at a person is a seizure and requires legal justification. No officer shall point a firearm at or in the direction of a person unless there is a reasonable perception of a substantial risk that the situation may escalate to justify deadly force. If an officer points a firearm at a person, the officer shall, if feasible, safe and when appropriate, advise the subject the reason why the officer(s) pointed the firearm.

e. REPORTING. When an officer intentionally points any firearm at a person, it shall be considered a reportable use of force. Such use of force must be reasonable under the objective facts and circumstances.

2. DISCHARGE OF FIREARMS OR OTHER USE OF DEADLY FORCE.

a. PERMISSIBLE CIRCUMSTANCES. Except as limited by Sections VI.G.2.d. and e., an officer may discharge a firearm or use other deadly force in any of the following circumstances. The circumstances below (2.a.i-iv) apply to a discharge of a firearm or application of deadly force:

i. In self-defense when the officer has reasonable cause to believe that he or she is in immediate danger of death or serious bodily injury; or

ii. In defense of another person when the officer has reasonable cause to believe that the person is in immediate danger of death or serious bodily injury. However, an officer may not discharge a firearm at, or use deadly force against, a person who presents a danger only to him or herself, and there is no reasonable cause to believe that the person poses an immediate danger of death or serious bodily injury to the officer or any other person; or

iii. To apprehend a person when both of the following circumstances exist:

- The officer has reasonable cause to believe that the person has committed or has attempted to commit a violent felony involving the use or threatened use of deadly force; AND
- The officer has reasonable cause to believe that a substantial risk exists that the person will cause death or serious bodily injury to officers or others if the person's apprehension is delayed; or

iv.   To kill an animal posing an immediate threat.

Officers shall reassess the situation, when feasible and safe, to determine whether the subject continues to pose an active threat.

b.   VERBAL WARNING.  If feasible, and if doing so would not increase the danger to the officer or others, an officer shall give a verbal warning to submit to the authority of the officer before discharging a firearm or using other deadly force.

c.   REASONABLE CARE FOR THE PUBLIC.  To the extent feasible, an officer shall take reasonable care when discharging his or her firearm so as not to jeopardize the safety of the public or officers.

d.   PROHIBITED CIRCUMSTANCE.  Officers shall not discharge their firearm:

i.   As a warning; or
ii.   At a person who presents a danger only to him or herself.

e.   MOVING VEHICLES.  An officer shall not discharge a firearm at the operator or occupant of a moving vehicle unless the operator or occupant poses an immediate threat of death or serious bodily injury to the public or an officer by means other than the vehicle.  Officers shall not discharge a firearm from his or her moving vehicle.

3.   RENDERING OR REQUESTING MEDICAL AID.  Following the use of deadly force, officers shall render or request medical aid if needed or requested by anyone as soon as reasonably possible.

4.   REPORTING.

a.   DISCHARGE OF FIREARMS.  Except for firearm discharges at an approved range or during lawful recreational activity, an officer who discharges a firearm, either on or off duty, shall report the discharge as required under DGO 8.11, Investigation of Officer Involved Shootings and Discharges.  This includes an intentional or unintentional discharge, either within or outside the City and County of San Francisco.

b.   OTHER DEADLY FORCE.  An officer who applies other force that results in death shall report the force to the officer's supervisor, and it

shall be investigated as required under DGO 8.12, In Custody Deaths. An officer who applies other deadly force that results in serious bodily injury shall report the force to the officer's supervisor. The supervisor shall, regardless whether possible misconduct occurred, immediately report the force to their superior officer and their commanding officer, who shall determine which unit shall be responsible for further investigation. An officer who applies other deadly force that does not result in serious bodily injury shall report the force.

The following chart illustrates how a suspect's resistance/actions can correlate to the force applied by the officer:

| Subject's Actions | Description | Possible Force Option |
|---|---|---|
| Compliance | Subject offers no resistance | • Mere professional appearance<br>• Nonverbal actions<br>• Verbal requests and commands<br>• Handcuffing and control holds |
| Passive non-compliance | Does not respond to verbal commands but also offers no physical form of resistance | • Officer's strength to take physical control, including lifting/carrying<br>• Pain compliance control holds, takedowns and techniques to direct movement or immobilize |
| Active resistance | Physically evasive movements to defeat an officer's attempt at control, including bracing, tensing, running away, verbally, or physically signaling an intention to avoid or prevent being taken into or retained in custody | • Use of personal body weapons to gain advantage over the subject<br>• Pain compliance control holds, takedowns and techniques to direct movement or immobilize a subject |
| Assaultive | Aggressive or combative; attempting to assault the officer or another person, verbally or physically | • Use of devices and/or techniques to ultimately gain control of the situation |

| Subject's Actions | Description | Possible Force Option |
|---|---|---|
| | displays an intention to assault the officer or another person | • Use of personal body weapons to gain advantage over the subject |
| Life-threatening | Any action likely to result in serious bodily injury or death of the officer or another person | • Utilizing firearms or any other available weapon or action in defense of self and others to stop the threat <br><br> • Vehicle intervention (Deflection) |

## VII. USE OF FORCE REPORTING

A. REPORTABLE USES OF FORCE. Officers shall report any use of force involving physical controls when the subject is injured, complains of injury in the presence of officers, or complains of pain that persists beyond the use of a physical control hold. Officers shall also report any use of force involving the use of personal body weapons, chemical agents, impact weapons, ERIWs, vehicle interventions, K-9 bites, and firearms. Additionally, officers shall report the intentional pointing of firearms at a subject.

   1. NOTIFICATION OF USE OF FORCE. An officer shall notify his/her supervisor immediately or as soon as practical of any reportable use of force. A supervisor shall be notified if an officer receives an allegation of excessive force.
   2. EVALUATION OF USE OF FORCE. A supervisor shall conduct a use of force evaluation in all cases involving a reportable use of force.
   3. EXCESSIVE USE OF FORCE. Every allegation of excessive force shall be subject to the reporting and investigative requirements of this General Order and applicable disciplinary policies.

B. PROCEDURES

   1. OFFICER'S RESPONSIBILITY. Any reportable use of force shall be documented in detail in an incident report, supplemental incident report, or statement form. Descriptions shall be in clear, precise and plain language and shall be as specific as possible.

      a. When the officer using force is preparing the incident report, the officer shall include the following information:

      i. The subject's action necessitating the use of force, including the threat presented by the subject;
      ii. Efforts to de-escalate prior to the use of force; and if not, why not;
      iii. Any warning given and if not, why not;
      iv. The type of force used;
      v. Injury sustained by the subject;
      vi. Injury sustained by the officer or another person;
      vii. Information regarding medical assessment or evaluation, including whether the subject refused;
      viii. The supervisor's name, rank, star number and the time notified.

b. In the event that an officer cannot document his/her use of force due to exceptional circumstances, another officer shall document this use of force in an incident report, supplemental incident report or statement form at the direction of a supervisor.

2. SUPERVISOR'S RESPONSIBILITY. When notified of the use of force, the supervisor shall conduct a supervisorial evaluation to determine whether the force used appears reasonable and within the provisions of this order. The supervisor shall:

a. Immediately respond to the scene unless a response is impractical, poses a danger, or where officers' continued presence creates a risk. When more than one supervisor responds, the responsibility shall fall on the senior supervisor;
b. Ensure the scene is secure and observe injured subjects or officers;
c. Ensure that witnesses (including officers) are identified and interviewed, and that this information is included in the incident report. The number of witnesses may preclude identification and interview of all witnesses, however supervisors shall ensure identification to the best of their ability;
d. Ensure photographs of injuries are taken and all other evidence is booked;
e. Remain available to review the officer's incident report, supplemental incident report and written statement at the direction of the superior officer. A supervisor shall not approve an incident report or written statement involving a use of force that does not comply with the requirements as set forth in VII.B.1. above;
f. If applicable, ensure the supervisor's reason for not responding to the scene is included in the incident report.
g. Complete and submit the Supervisory Use of Force Evaluation form, indicating whether the force used appears reasonable, by the end of watch;
h. Complete the Use of Force Log (SFPD 128) and attach one copy of the incident report by the end of watch.

If a supervisor determines that a member's use of force is unnecessary or that an officer has applied force that results in serious bodily injury or death, the supervisor shall notify his/her superior officer.

3. SUPERIOR OFFICER'S RESPONSIBILITY. When a superior officer is notified of a supervisor's preliminary determination of unnecessary force or force that results in serious bodily injury or death, the superior officer shall:

   a. Respond to the scene and assume command, as practical;
   b. Notify the commanding officer and ensure all other notifications are made consistent with DGO 1.06, Duties of Superior Officers, and, in cases of unnecessary force, notification and submission of any documentation to the Office of Citizen Complaints, consistent with DGO 2.04, (Citizen Complaints Against Officers);
   c. Determine which unit(s) will be responsible for the on-going investigation(s);
   d. Prepare a report containing preliminary findings, conclusions and/or recommendations, if appropriate.

C. OTHER REQUIREMENTS.

   1. USE OF FORCE LOG. The following units shall maintain a Use of Force Log:

      a. District Stations
      b. Airport Bureau
      c. Department Operations Center

   2. RECORDING PROCEDURES. Supervisors shall document a reportable use of force for all officers – including those officers assigned to specialized units – in the Use of Force Log at the District Station where the use of force occurred, except as noted below:

      a. Any use of force occurring outside the city limits, except at the San Francisco International Airport, shall be recorded in the Department Operations Center's Use of Force Log.
      b. Any use of force occurring at the San Francisco International Airport shall be recorded in the Airport Bureau's Use of Force Log.

   3. DOCUMENT ROUTING.

      a. Commanding officers shall forward the original completed Supervisor's Use of Force Evaluation Form(s) to the Commanding Officer of Risk Management and one copy to the Commanding Officer of the Training Division and another to the officer's Bureau Deputy Chief no later than the end of the watch. This information shall be entered into the Use of Force database at Risk Management to generate monthly reports as described in section C (5) below.
      b. On the Monday of each week, unless a holiday, and then on Tuesday, commanding officers shall sign the Use of Force Log and send it, along

with one copy of the incident report, to their respective Bureau Deputy Chief and one copy of the Use of Force Log with copies of the incident reports to the Commanding Officers of the Training Division and Risk Management.

4. TRAINING DIVISION RESPONSIBILITIES. The Commanding Officer of the Training Division will maintain controls that assure all Use of Force Logs and Supervisor Evaluations are received, and shall perform a non-punitive review to ascertain the number, types, proper application and effectiveness of uses of force. The information developed shall be used to identify training needs.

5. RISK MANAGEMENT RESPONSIBILITIES. The Commanding Officer of the Risk Management shall general report bi-weekly (1st and 15th) to the Chief of Police on the use of force by Department members that includes comprehensive use of force statistics consistent with current federal, state and local laws on use of force reporting.

6. DATA COLLECTION AND ANALYSIS. The Department will collect and analyze its use of force data in the Risk Management Use of Force database. The Use of Force statistics and analysis will include at a minimum:

   a. The type of force
   b. The types and degree of injury to suspect and officer
   c. Date and time
   d. Location of the incident
   e. Officer's unit
   f. District station where the use of force occurred
   g. Officer's assignment
   h. Number of officers using force in the incident
   i. Officer's activity when force was used (ex. Handcuffing, search warrant, pursuit)
   j. Subject's activity requiring the officer to use force
   k. Officer's demographics (age, gender, race/ethnicity, rank, number of years with SFPD, number of years as a police officer)
   l. Suspect demographics including race/ethnicity, age, gender, gender identity, primary language and other factors such as mental illness, cognitive impairment, developmental disability, drug and alcohol use/addiction and homeless.

The Department will post on a monthly basis on its website comprehensive use of force statistics and analysis and provide a written use of force report to the Police Commission annually.

**VIII.    OFFICER'S RESPONSIBILITY AND COMPLIANCE.**

All officers are responsible for knowing and complying with this policy.  As with all General Orders, any violation of this policy may subject the member to disciplinary action. Supervisors shall ensure that all personnel in their command know the content of this policy and operate in compliance with it.  Any member who becomes aware of any violation to this policy shall promptly report it in accordance with established procedure.


References
DGO 1.06, Duties of Superior Officers
DGO 2.04, Citizen Complaints Against Officers
DGO 5.05, Response and Pursuit Driving
DGO 5.17, Policy Prohibiting Biased Policing
DGO 5.18, Prisoner Handling and Transportation
DGO 5.21, The Crisis Intervention Team (CIT) Response to Persons in Crisis Calls for Service
DGO 8.11, Investigation of Officer Involved Shootings and Discharges
DGO 8.12, In Custody Deaths