**JOHN L. BURRIS, ESQ., SBN 69888**
LAW OFFICES OF JOHN L. BURRIS
Airport Corporate Center
7677 Oakport Street, Suite 1120
Oakland, CA 94621
Telephone: (510) 839-5200
Email: John.Burris@johnburrislaw.com

**ADANTÉ D. POINTER, ESQ., SBN 236229**
**PATRICK BUELNA, ESQ., SBN 317043**
POINTER & BUELNA, LLP
LAWYERS FOR THE PEOPLE
Wells Fargo Center
1901 Harrison St., Suite 1140
Oakland, CA 94612
Tel: (510) 929-5400
Email: APointer@LawyersFTP.com
Email: PBuelna@LawyersFTP.com

**MELISSA C. NOLD, Esq. SBN 301378**
**NOLD LAW**
Russo Building
521 Georgia Street
Vallejo, California 94590
Telephone: (707)644-4004
melissa@noldlaw.com

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUDY O'NEIL,<br><br>        Plaintiff,<br><br>v.<br><br>CITY AND COUNTY OF SAN FRANCISCO, et al,<br><br>        Defendants. | Case No.: 3:17-cv-07190-JCS<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>**DATE:** July 2, 2021<br>**TIME:** 9:30 AM<br>**CRT:** Zoom Conference<br><br>HON. JOSEPH C. SPERO |

# **TABLE OF CONTENTS**

Table of Contents ................................................................................................ ii

Table of Authorities ............................................................................................ iii

I. Introduction .................................................................................................... 1

II. Statement of Facts ......................................................................................... 1

III. Argument ..................................................................................................... 2

    A. Legal Standard for Motion for Summary Judgment ................................... 2

    B. Defendant Samayoa Used Excessive Force…............................................ 2

    C. Defendant Talusan Was an Integral Participant……………………………………… 4

    D. Defendants Are Not Entitled to Qualified Immunity……………………………… 5

    E. Shooting a Fleeing Unarmed, Nonviolent Man Shocks the Conscience………………… 13

    F. Plaintiff's Negligence Claim Must Proceed……………………………………… 14

    G. Defendants Claim State Immunities Do Not Apply……………………………… 15

    H. Plaintiff's Bane Act Claim Must Proceed……………………………………… 16

Conclusion ……………………………………………………………………………… 18

POINTER & BUELNA, LLP
LAWYERS FOR THE PEOPLE
1901 Harrison St., Ste. 1140,
Oakland, CA 94612
Tel: (510) 929 - 5400

**TABLE OF AUTHORITIES**

**State Cases**

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986).................................................2

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) .........................................................2

*Cornell v. CCSF,* 17 Cal.App.5th 766 (Ct. App. 2017)...........................................17

*Eastburn v. Regional Fire Protection Authority*, 31 Cal. 4th 1175 (2002) ................16

*Grudt v. City of Los Angeles*, 86 Cal. Rptr. 465 (1970)............................................15

*Hayes v. Cty. Of San Diego*, 57 Cal. 4th 622 (2013) .............................................15

*Miklosy v. Regents of the University of California*, 44 Cal. 4th 876 (2008)................16

*People v. Lashley* (1991) 1 Cal.App.4th 938 .........................................................17

*Sipple v. City of Hayward*, 225 Cal. App. 4th 349 (2014) ......................................16

*Venegas v. County of Los Angeles* (2007) 153 Cal. App. 4th 1230.........................17

**Statutes**

Fed.R.Civ.P. 56(a) ...................................................................................................2

**Federal Cases**

*Anderson v. Creighton*, 483 U.S. 635 (1987) .......................................................6, 7

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ...........................................2

*Blankenhorn v. City of Orange*, 485 F.3d 463 (9th Cir. 2007)...............................16

*Boyd v. Benton County,* 374 F.3d 773 (9th Cir. 2004)............................................4

*Carroll v. Carman*, 135 S. Ct. 348 (2014) ............................................................6

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) .....................................................2

*Chien Van Bui v. City & Cty. of San Francisco*, 61 F. Supp. 3d 877 (N.D. Cal. 2014) ......16

*Community House, Inc. v. City of Boise*, 623 F.3d 945 (9th Cir. 2010) ....................7

*Cruz v. City of Anaheim*, 765 F.3d 1076 (9th Cir. 2014)....................................5, 12

*Cty. of Sacramento v. Lewis*, 523 U.S. 833 (1998)...............................................14

*Curnow v. Ridgecrest Police*, 952 F.2d 321, 323 (9th Cir. 1991) ..........................12

POINTER & BUELNA, LLP
LAWYERS FOR THE PEOPLE
1901 Harrison St., Ste. 1140,
Oakland, CA 94612
Tel: (510) 929 - 5400

iii

*Hope v. Pelzer*, 536 U.S. 730 (2002) ...................................................................................6

*James ex rel. James v. Sadler*, 909 F.2d 834 (5th Cir.1990) ...............................................4, 13

*Jones v. Williams,* 297 F.3d 930

  (9th Cir. 2002).......................................................................................................................4

*Kennedy v. City of Ridgefield*, 439 F.3d 1055 (9th Cir. 2006) ...............................................5

*Lopez v. Gelhaus*, 149 F.Supp.3d 1154 (9th Cir. 2016)...........................................................12

*Martin v. San Jose*, 2020 WL 5910078 (N.D. Oct. 6, 2020) ...................................................8

*Melear v. Spears*, 862 F.2d 1177 (5th Cir.1989) ..................................................................4, 13

*Messerschmidt v. Millender*, 565 U.S. 535 (2012) ..................................................................6

*Mitchell v. Forsyth*, 472 U.S. 511, 535, n. 12 (1985) ..............................................................7

*Monzon v. City of Murrietta*, 978 F.3d 1150 (2020) ................................................................8

*Moore v. City and County of San Francisco*, 2020 WL 7260530 (N.D. Dec. 10, 2020) ....................11

*Moreland v. Las Vegas Metro. Police Dep't*, 159 F.3d 365 (9th Cir. 1998) .........................13

*Nieto v. City and County of San Francisco,* 2015 WL 7180609 ............................................14

*Nunez v. City of San Jose*, 381 F.Supp.3d 1192 (N.D. 2019) ................................................14

*Nunez v. Santos*, 427 F.Supp.3d 1165 (Dec. 13, 2019) ..........................................................12

*Osolinski v. Kane*, 92 F.3d 934 (9th Cir. 1996) .......................................................................7

*Pearson v. Callahan*, 555 U.S. 223 (2009)...............................................................................5

*Plumhoff v. Rickard*, 572 U.S. 765 (2014)...............................................................................9

*Porter v. Osborn*, 546 F.3d 1131 (9th Cir. 2008) ..................................................................14

*Preschooler II v. Clark County Sch. Bd. of Trs.,* 479 F.3d 1175 (9th Cir. 2007) ..................4

*Raines v. Counseling Assocs., Inc.*, 883 F.3d 1071 (8th Cir. 2018).......................................10

*Reese v. County of Sacramento*, (9th Cir. 2018) 888 F.3d 1030............................................17

*San Jose Charter of Hells Angels Motorcycle Club v. City of San Jose*, 492 F.3d 962 (9th Cir. 2005).7

*Saucier v. Katz*, 533 U.S. 194 (2001) .......................................................................................5

*See Tolan v. Cotton,* 572 U.S. 650 (2014) ..............................................................................11

*Sorrels v. McKee*, 290 F.3d 965 (9th Cir. 2002)......................................................................7

*Tennessee v. Garner*, 471 U.S. 1 (1985)...................................................................................7

POINTER & BUELNA, LLP
LAWYERS FOR THE PEOPLE
1901 Harrison St., Ste. 1140,
Oakland, CA 94612
Tel: (510) 929 - 5400

*Thompson v. City of Monticello,* 894 F.3d 993 (8th Cir. 2018)....................................10, 11

*Torres v. City of Los Angeles,* 548 F.3d 1197 (9th Cir. 2008)....................................4

*Via v. City of Fairfield*, 833 F. Supp. 2d 1189 (E.D. Cal. 2011)....................................16

*Wenzel v. City of Bourbon,* 899 F.3d 598 (8th Cir. 2018)....................................9

*Wilkinson v. Torres*, 610 F.3d 546 (9th Cir. 2010)....................................13

*Woods v. CCSF,* Case 3:15-cv-05666-WHO....................................16

*Young Han v. City of Folsom,* 695 F. App'x 197 (9th Cir. 2017)....................................15

POINTER & BUELNA, LLP
LAWYERS FOR THE PEOPLE
1901 Harrison St., Ste. 1140,
Oakland, CA 94612
Tel: (510) 929 - 5400

# I.    INTRODUCTION

Curiously while the San Francisco District Attorney has charged Defendant Samayoa with several felonies for the shooting, Defendant City and County of San Francisco has chosen to argue (without a shred of evidence and Defendant Samayoa pleading the Fifth) that Defendant Samayoa lawfully shot and killed Keita O'Neil while he was unarmed and running away from officers.

The relevant and applicable case law on the issues raised by this troubling fact pattern have been clearly established for the last 35 years. Nevertheless, Defendant Samayoa elected to file his Rule 56 Motion which appears to be tantamount to a Rule 11 violation for being frivolous as it relates to his use of force. Furthermore, in what may be the greatest irony, Defendant City and County of San Francisco has already internally disciplined and found fault with Defendant Talusan's conduct for failure to supervise and *terminated* Defendant Samayoa from employment following the incident.

# II.    STATEMENT OF FACTS

Plaintiff has already recounted in the record the undisputed evidence and facts of the shooting in Section II of her Motion for Partial Summary Judgment. (Doc. 145). In light of the foregoing, she will not repeat the very same evidence here. (Doc. 145). However, Plaintiff will point out that since Defendant Samayoa has refused to testify, the only admissible evidence that suggests what Defendant Samayoa knew at time of the shooting is contained in the radio dispatch and computer automated dispatch. And that information is the following:

"NO WEAPONS SEEN", that "RP [Reporting Party] IS NOT INJURED", and

"SUSP CAME FROM BEHIND….TOOK KEY FROM RP'S

POCKET…..GRABBED RP'S HAND AND TOOK THE KEY."

(Doc. 145 – Pltf Mtn, Statement of Facts, at p. 2)

Based on this information, Defendant Samayoa knew that Keita was not reported to have used violence, was unarmed and simply stole the car keys from the reporting party's pocket without injury.

Additionally, the San Francisco Department of Police Accountablity found that Defendant Talusan failed to maintain radio contact, follow vehicle pursuit policy, activate his body worn camera and/or supervise Defendant Samayoa. The SFDPA refused to issue a finding on Defendant Samayoa's use of deadly force because SFPD terminated Defendant Samayoa a few months after the incident on March 9, 2018. (Admin. Motion to File Under Seal, Buelna Decl., **Ex. 1** – Summary of SFDPA Findings).

## III.    ARGUMENT[1]

### A.  LEGAL STANDARD FOR SUMMARY JUDGMENT

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). A material fact is one that could affect the outcome of the suit, and a genuine issue is one that could permit a reasonable jury to enter a verdict in the non-moving party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party moving for summary judgment bears the initial burden of establishing the absence of a genuine issue of material fact and can satisfy this burden by presenting evidence that negates an essential element of the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

### B.  DEFENDANT SAMAYOA USED EXCESSIVE FORCE

---

[1] Plaintiff does not oppose Defendant's Motion for Summary Judgment on her *Monell* claim or Fourteenth Amendment claim against Defendant Talusan.

Plaintiff will not reiterate all the reasons why it is obvious that Defendant Samayoa used excessive force since this issue was painstakingly examined in her Motion for Partial Summary Adjudication against Defendant Samayoa. (Pltf Mtn, Doc. 145, at pp. 10-17). Plaintiff will only note that in her motion the facts and inferences would have to be drawn against her; whereas here, all facts and disputes are drawn in her favor.

Importantly, based on the radio dispatch information, the Court must consider that Defendant Samayoa knew that Keita was unarmed, had committed no violent acts and simply was running away on foot when Defendant shot him in the throat.

It is with this favorable standard in mind that the Court must evaluate Defendant Samayoa's use of force under the following fact pattern: Defendant Samayoa knew that Keita was running away and unarmed after taking keys from the pocket of a lottery van driver, without any violence or weapons, when he intentionally shot Keita in the throat. So egregious and excessive was this display of violence that his own training officer, Defendant Talusan, tore the gun from his hands and made him sit in the patrol car without even patting Keita down for weapons. Indeed, Defendant Samayoa's own training officer testified at his deposition that he was intending to just get out of the car to run after Keita and that he knew Keita had been reported to be unarmed and had not used violence when he took the lottery van.

While Defendants attempt to frame their narrative to suggest that Defendant Samayoa was forced to make a decision to shoot within *a few seconds*, this is absolutely false. Defendant Samayoa *was not forced* to shoot and could have simply got out of his car and chased Keita on foot like his supervisor planned to do. Defendant Samayoa's decision to shoot Keita within seconds of Keita getting out of the car and running is self-inflicted and blatantly unlawful.

As such, Plaintiff will briefly address Defendants' disingenuous arguments about Qualified Immunity applying to Defendant Samayoa's killing of an unarmed, running black man after, what he knew to be, essentially a nonviolent crime. But first, Plaintiff will address Defendant Talusan's liability.

## C. DEFENDANT TALUSAN WAS AN INTEGRAL PARTICIPANT

"A person subjects another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." *Preschooler II v. Clark County Sch. Bd. of Trs.,* 479 F.3d 1175, 1183 (9th Cir. 2007) (internal citations omitted). A plaintiff must "establish the 'integral participation' of the officers in the alleged constitutional violation." *Jones v. Williams,* 297 F.3d 930, 935 (9th Cir. 2002); *see also Torres v. City of Los Angeles,* 548 F.3d 1197, 1206 (9th Cir. 2008). Officers who are "integral participants" in a constitutional violation are potentially liable under § 1983, even if they did not directly engage in the unconstitutional conduct themselves. *Boyd v. Benton County,* 374 F.3d 773, 781 (9th Cir. 2004).

Defendants make the argument that summary judgment should be granted against Plaintiff's claim as to Defendant Talusan because he did not actually shoot Keita. While officers are not integral participants simply by the virtue of being present at the scene of an alleged unlawful act (*Jones,* 297 F.3d at 936), they are integral participants if they stand watch while the excessive force occurs, are aware of it and do not object (*Boyd,* 374 F.3d 780). *See also Melear v. Spears*, 862 F.2d 1177, 1186 (5th Cir.1989) (recognizing that an officer who stands watch at the door is an integral participant)*; James ex rel. James v. Sadler*, 909 F.2d 834 (5th Cir.1990) (recognizing officers that are armed back up during a search are also integral participants). Here, Defendant Talusan testified that he was

trained and required to intervene if he saw another officer using excessive force. (Buelna Decl., **Ex. 1** – Talusan Depo, pp. 28-30).

As for Defendant Talusan's assertion he did not see Samayoa reach for his gun, the jury need not believe his own self-serving testimony that he somehow did not notice Defendant Samayoa had drawn a gun well before the car had stopped. *See Cruz v. City of Anaheim*, 765 F.3d 1076, 1078-79 (9th Cir. 2014) (holding that despite officers' testimony that the suspect was reaching for a gun, the jury need not believe that narrative, even without contradictory video evidence, because "if the suspect *doesn't* reach for his waistband or make some similar threatening gesture, it would clearly be unreasonable for the officers to shoot him after he stopped his vehicle and opened the door"). Accordingly, the jury could reject Defendant Talusan's testimony and believe that Defendant Talusan saw Defendant Samayoa drawing and pointing his gun at Keita – and yet did nothing to intervene.

Indeed, his own Department found Defendant Talusan failed to adequately supervise his trainee and demoted him from patrol and being a field training officer to inspecting commercial trucks for compliance. (Buelna Decl., **Ex. 1** – Talusan Depo, p. 98).

For the aforementioned reasons, the Court should DENY Defendant Talusan's Motion.

## D. DEFENDANTS ARE NOT ENTITLED TO QUALIFIED IMMUNITY

The doctrine of qualified immunity "protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotations omitted). The two-pronged qualified immunity analysis queries: (1) whether there was a deprivation of a constitutional or statutory right, and (2) whether that constitutional or statutory right was "clearly established" at the time of the incident. *Saucier v. Katz*, 533 U.S. 194, 201–02 (2001); *Pearson*, 555 U.S. at 232.

Again, at summary judgment, the Court reviews the facts in the plaintiff's favor but the plaintiff bears the burden to show that the law is "clearly established" against the defendants. *Saucier*, 533 U.S. at 201; *Kennedy v. City of Ridgefield*, 439 F.3d 1055, 1059– 60 (9th Cir. 2006). Since Plaintiff has already addressed the Fourth Amendment deprivation at great length in her motion for summary judgment and reiterated it in Section B, she will address the "clearly established" prong of the Qualified Immunity doctrine now.

### 1. Clearly Established[2] [3]

"'[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective legal reasonableness' of the action, assessed in light of the legal rules that were 'clearly established' at the time it was taken."' *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012) (quoting *Anderson v. Creighton*, 483 U.S. 635, 639 (1987) (citation omitted)). "[A] right is clearly established only if its contours are sufficiently clear that 'a reasonable official would understand that what he is doing violates that right.' *Carroll v. Carman*, 135 S. Ct. 348, 350 (2014) (citation omitted).

As the Supreme Court explained in *Hope v. Pelzer*, 536 U.S. 730 (2002), qualified immunity operates "to ensure that before they are subjected to suit, officers are on notice their

---

[2] The Ninth Circuit has recently observed: "Some argue that the 'clearly established' prong of the analysis lacks a solid legal foundation." *Rodriguez v. Swartz*, 899 F.3d 719, 732 n.40 (9th Cir. 2018) (citing William Baude, Is Qualified Immunity Unlawful?, 106 Calif. L. Rev. 45 (2018); see also *Ziglar v. Abbasi*, 137 S.Ct. 1843, 1872 (2017) (Thomas, J., concurring in part and concurring in the judgment) ("In an appropriate case, we should reconsider our qualified immunity jurisprudence.")). Nonetheless, the Circuit went on to note it "must apply" the test given the current state of the law. *Id.*
[3] Justice Thomas recently observed that the "text of § 1983 makes no mention of defenses of immunities". *Ziglar v. Abassi,* 137 S.Ct. 1843, 1870 (2017), and there is no basis for the objective inquiry into clearly established law that our modern cases prescribe. *Baxter v. Bracey*, 140 S. Ct. 1862, 1864 (2020).

POINTER & BUELNA, LLP
LAWYERS FOR THE PEOPLE
1901 Harrison St., Ste. 1140,
Oakland, CA 94612
Tel: (510) 929 - 5400

conduct is unlawful." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) quoting *Saucier v. Katz*, 533 U.S. 194, at 206 (2001).

This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, see *Mitchell v. Forsyth*, 472 U.S. 511, 535, n. 12 (1985); but it is to say that in the light of pre-existing law the unlawfulness must be apparent." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

Some specificity is required, "[b]ut general statements of the law are not inherently incapable of giving fair and clear warning, and in other instances a general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question, even though 'the very action in question has not previously been held unlawful." *Hope*, supra at 740-741 quoting *Anderson*, supra at 640 (quotations omitted).

In the absence of binding precedent, the court should look to all available decisional law, including the law of other circuits and district courts. *Community House, Inc. v. City of Boise*, 623 F.3d 945, 967 (9th Cir. 2010) (citing *Osolinski v. Kane*, 92 F.3d 934, 936 (9th Cir. 1996)). Unpublished district court decisions may also "inform" the court's analysis. *Sorrels v. McKee*, 290 F.3d 965, 971–72 (9th Cir. 2002).

It will, however, "be a rare instance in which, absent any published opinions on point or overwhelming obviousness of illegality, [the court] can conclude that the law was clearly established on the basis of unpublished decisions only." *Id.* Nevertheless, Defendants **are not entitled** to qualified immunity "**simply because there is no case on all fours** prohibiting this particular manifestation of unconstitutional conduct," *see San Jose Charter of Hells Angels Motorcycle Club v. City of San Jose*, 492 F.3d 962 (9th Cir. 2005) [emphasis added].

### a. Defendant Samayoa's Use of Force Violated Clearly Established Law

POINTER & BUELNA, LLP
LAWYERS FOR THE PEOPLE
1901 Harrison St., Ste. 1140,
Oakland, CA 94612
Tel: (510) 929 - 5400

The law has been clearly established for over 35 years that a police officer may not use deadly force where the suspect poses no "immediate" threat of serious bodily harm or death to the officer or others. See *Tennessee v. Garner*, 471 U.S. 1, 11 (1985) ("Where the suspect poses no immediate threat to the officer and no threat to others, the harm resulting from failing to apprehend him does not justify the use of deadly force to do so.").

Furthermore, the claimed threat cannot just be any threat, as Defendant moving papers attempt to frame it. The Supreme Court has explicitly stated that it is clearly established "that [deadly] force may not be used unless it is necessary to prevent the escape [of a suspected felon] and the officer has probable cause to believe that the suspect poses a **significant threat of death or serious physical injury** to the officer or others". *Tennessee,* at 3 (emphasis added); *see also Martin v. San Jose*, 2020 WL 5910078 at *12 (N.D. Oct. 6, 2020) (denying qualified immunity where officer used deadly force with his car against fleeing, running suspects that had threatened to shoot and stab security guards and officer was afraid that the two suspects were starting to surround him and were reaching for their waistbands).

Defendants' argument that Defendant Samayoa's shooting of an unarmed, black man whom he suspected of committing a nonviolent crime somehow falls within the purview of *Monzon v. City of Murietta*, 978 F.3d 1150 (2020) reeks of desperation. Defendants' tortured attempt to analogize the case at bar with *Monzon* is not an apples and oranges comparison but more like apples to an elephant.

In *Monzon*, decedent Monzon led officers on a high-speed chase of up to 100 mph that ended in a dead end. *Monzon*, at 1153. Monzon turned his car around, hit a fence, did not stop and pointed his car at five officers. *Monzon*, at 1154. Unlike Talusan and Samayoa, the defendants in *Monzon* were faced with the deadly threat of being ran over by a car and, even then, the defendants in *Monzon* gave the decedent a litany of verbal warnings they were going to shoot prior to opening fire. *Monzon*, at 1154. Officers fired shots at Monzon as he drove his van at approximately 17 mph at them and through them leading officers

POINTER & BUELNA, LLP
LAWYERS FOR THE PEOPLE
1901 Harrison St., Ste. 1140,
Oakland, CA 94612
Tel: (510) 929 - 5400

to believe some of them had been run over. *Monzon*, at 1154. Monzon even crashed his car into an officer's patrol car. *Monzon*, at 1154. Obviously here, Keita was not "armed", so to speak, with the deadly weapon of a car, but merely on foot running away as Samayoa's partner and supervisor testified.

Defendants also cite to *Plumhoff v. Rickard*, 572 U.S. 765 (2014) for qualified immunity – even though this is again – another case where the decedent had employed the vehicle as a weapon against officers when they shot. In *Plumhoff*, officers pulled over Rickard for a headlight defect. *Plumhoff*, at 768. After the officer asked Rickard about drinking alcohol, Rickard sped off and six police cruisers gave chase. *Plumhoff*, at 769. It was undisputed that the chase reached speeds over 100 mph and that Rickard used his car to crash into one of the officer's police cruisers. *Plumhoff*, at 769. Due to the crash, Rickard's car spun out and was cornered, so he put his car into reverse to try and escape. *Plumhoff*, at 769.

By this time, the officers had exited their own cars and approached Rickard's car on foot. *Plumhoff*, at 769-770. The officers had out their guns and pounded on Rickard's car window indicating for him to get out. *Plumhoff*, at 769-770. Then Rickard used his car as weapon and *rammed* one of the officer's police cruisers so *finally* the officers shot. *Plumhoff*, at 770. But this did not even deter Rickard, he reversed and swung around his vehicle and nearly ran over another one of the officers. *Plumhoff*, at 770. So the officers shot again and Rickard crashed. *Plumhoff*, at 770. This set of facts is notably absent from Defendants briefing of *Plumhoff* and it is not hard to tell why. In both instances when the officers shot, Rickard had actually threatened to kill the officers with his car causing them to shoot. Furthermore, Rickard was still in his car driving away dangerously, after reaching speeds over 100 mph, when the officers shot the second volley. Here, it is *undisputed* that Keita never traveled at speeds of 100 mph and had actually exited his car and was running away *on foot*, when Defendant shot him in the throat.

Defendants also reach outside the Circuit to cite *Wenzel v. City of Bourbon,* 899 F.3d 598 (8th Cir. 2018) and a number of other inapposite, non-binding cases. Again, in *Wenzel*, the officer actually knew Wenzel and Wenzel's own family had warned the officer that Wenzel was "dangerous", desperate and

"not going back to jail". *Wenzel,* at 600. The officer also knew Wenzel was classified as "aggressive, known to be violent with weapons and violent towards law enforcement." *Wenzel,* at 600. When the officer pulled over Wenzel for a traffic stop, Wenzel fled and led the officer on a high speed chase before crashing his car into a shallow ditch. *Wenzel,* at 600.

Wenzel got out of the car and began walking aggressively towards the officer and the officer could not see whether or not Wenzel had anything in his hands. *Wenzel,* at 600. The officer got out of the car and ordered Wenzel to stop and show his hands but Wenzel continued to aggressively approach the officer and was within three feet of him when the officer finally shot. *Wenzel,* at 600. The Eighth Circuit reasoned that because the officer learned that Wenzel was known to be violent with officers, that his aggressive behavior matched that reputation, that the video evidence demonstrated the same, and that Wenzel refused to obey verbal orders that the officer's decision to shoot was entitled to qualified immunity - then cited to the contrasting examples, where they denied qualified immunity, which resembles Plaintiff's case of *Thompson v. City of Monticello*, 894 F.3d 993, 999 (8th Cir. 2018) (dismissing appeal for lack of jurisdiction where the video evidence did not conclusively establish that the plaintiff was "aggressive and confrontational such that a reasonable officer . . . would have believed he posed an immediate threat"); *Raines v. Counseling Assocs., Inc.*, 883 F.3d 1071, 1075 (8th Cir. 2018) (dismissing appeal for lack of jurisdiction where the video evidence was "inconclusive as to whether or not Raines advanced on the officers in a manner that posed a threat of serious physical harm to an officer"), petition for cert. filed, 87 U.S.L.W. 3038 (U.S. July 11, 2018) (No. 18-110).

Unlike *Wenzel*, the undisputed facts here are that Defendant Samayoa did not know who Keita was or if he had any prior violent encounters with law enforcement. However, here Defendant did know from the radio dispatch which is corroborated by his body worn camera and what his partner

and training officer testified to: 1) Keita's hands were open and empty, 2) that he was reported to have no weapons, 3) there was no information that Keita had violently committed any crimes, 4) that he appeared to be simply running past the officers, and 5) per Defendant Talusan's sworn testimony Keita did *nothing* that would merit the use of deadly force.

This Court can look to the Eighth Circuit citations to *Thompson,* supra, and *Raines*, supra, for direction as they are on point. The same appellate court denied Qualified Immunity because the video evidence did not conclusively establish that the person was "aggressive and confrontational such that a reasonable officer . . . would have believed he posed an immediate threat". *Thompson v. City of Monticello*, 894 F.3d 993, 999 (8th Cir. 2018). Here, we actually have the testimony of a percipient witness, Defendant Samayoa's supervising officer, stating the force he used was unlawful.

Again, none of the cases Defendant cite stand for the principle that officers are entitled to qualified immunity when they shoot an unarmed man, running away or even making movement towards them in an aggressive manner (and this is a disputed fact).

In fact, the Supreme Court has held that officers are **not entitled to qualified immunity** when they shoot a person that is coming at them in a threatening manner. *See Tolan v. Cotton,* 572 U.S. 650 (2014) (overturning application of qualified immunity where a young man threatened an officer who was arresting his mother to "get [his] fucking hands off [his] mom" and rose to his feet and the officer believed he was about to be attacked in the dark so he shot). Just recently, a district court denied qualified immunity to a San Francisco officer who shot a man that had punched and knocked out one of two officers who were attempting to arrest the man on a dark stairway and was coming at the second officer when the officer shot the man twice at point blank range. *See Moore v. City and County of San Francisco*, 2020 WL 7260530 (N.D. Dec. 10, 2020) (denying qualified immunity and

POINTER & BUELNA, LLP
LAWYERS FOR THE PEOPLE
1901 Harrison St., Ste. 1140,
Oakland, CA 94612
Tel: (510) 929 - 5400

certifying appeal of qualified immunity frivolous in *Moore v. City and County of San Francisco,* Case 3:18-cv-00634-SI at Doc. 129 (N.D. Jan. 8, 2021).

Additionally, officers are not permitted to use deadly force without issuing a verbal warning even when they are trapped in a car with suspect and believe the suspect is reaching for a weapon. *Gonzalez v City of Anaheim*, 747 F.3d 789, 794 (9th Cir. 2014). Here, it is undisputed that Defendant Samayoa failed to issue any verbal warnings before he used deadly force.

Likewise, officers were denied qualified immunity when the officers believed a suspect was reaching for a weapon in their waistband and opening his car door to shoot. The court concluded a jury could infer from the evidence the suspect was not reaching for a gun because he had no gun. *See Cruz v. City of Anaheim*, 765 F.3d 1076, 1078 (9th Cir. 2014). Here, it is undisputed from the body camera evidence and Talusan's testimony that Keita was not reaching for a weapon but simply running and possessed no weapon at all.

Officers are not even entitled to qualified immunity when it is an undisputed fact that the person was actually holding a weapon. *See Nunez v. Santos*, 427 F.Supp.3d 1165 (Dec. 13, 2019) (affirming denial of qualified immunity where officers shot and killed a young man who stepped out onto his front porch holding a gun, after repeatedly refusing to drop the gun and allegedly pointing it at officers); *Curnow v. Ridgecrest Police*, 952 F.2d 321, 323, 325 (9th Cir. 1991) (affirming denial of qualified immunity for officers where, under the plaintiff's version of the shooting, the officers could not reasonably have believed the use of deadly force was lawful because the decedent did not point the machine gun at the officers); *Lopez v. Gelhaus*, 149 F.Supp.3d 1154 (9th Cir. 2016) (cert. denied) (overturning qualified immunity because a dispute of fact existed whether young man with AK-47 was simply turning around or lifting his assault rifle to point at the officer). Here, it is undisputed that Keita was unarmed.

POINTER & BUELNA, LLP
LAWYERS FOR THE PEOPLE
1901 Harrison St., Ste. 1140,
Oakland, CA 94612
Tel: (510) 929 - 5400

Instead, it has been clearly established for decades that officers are *not permitted* to use deadly force against someone that is unarmed and fleeing. Over and over the courts have held that the "[c]ase law has clearly established that an officer may not use deadly force to apprehend a suspect where the suspect poses no immediate threat to the officer or others." *Wilkinson v. Torres*, 610 F.3d 546, 550 (9th Cir. 2010). Here, a jury could correctly conclude, like Defendant Talusan did, that Keita was unarmed and simply running away when Defendant Samayoa shot him and therefore did not pose an immediate and *significant* threat of serious bodily harm.

**b. Defendant Talusan Failed to Intervene in Samayoa's Use of Clearly Established Excessive Force**

Defendants cite no case law to support their position that Defendant Talusan is entitled to qualified immunity for failing to intervene when he witnessed his trainee's excessive and deadly force. Defendants' failed to include a cite because it has been clearly established for decades that officers must intervene when they witness excessive force and do not object (*Boyd*, 374 F.3d 780); *see also Melear v. Spears*, 862 F.2d 1177, 1186 (5th Cir.1989) (recognizing that an officer who stands watch at the door is an integral participant)*; James ex rel. James v. Sadler*, 909 F.2d 834 (5th Cir.1990) (recognizing officers that are armed back up during a search are also integral participants). Here, Defendant Talusan testified that he was trained that he must intervene when he sees excessive force and knows that he may be held criminally and civilly liable if he does not. Therefore, it is unquestionable that Defendant Talusan is not entitled to qualified immunity on this issue.

**E. SHOOTING A FLEEING UNARMED NONVIOLENT MAN SHOCKS THE CONSCIENCE**

Plaintiff's Fourteenth Amendment claim for right to familial relationship should proceed because Defendant Samayoa's killing of an unarmed, nonviolent and fleeing man shocks the conscience. *See*

*Moreland v. Las Vegas Metro. Police Dep't*, 159 F.3d 365, 371 (9th Cir. 1998), *as amended* (Nov. 24, 1998) (noting parents and children of the decedent may assert such claims after a killing by law enforcement). The Fourteenth Amendment's substantive due process clause protects against "government power arbitrarily and oppressively exercised." *Cty. of Sacramento v. Lewis*, 523 U.S. 833 (1998). " "The Supreme Court has made it clear . . . that only official conduct that shocks the conscience is cognizable as a due process violation." *Porter v. Osborn*, 546 F.3d 1131, 1137. (9th Cir. 2008) (internal quotation marks omitted). "The relevant question . . . is whether the shocks the conscience standard is met by showing . . . deliberate indifference or requires a more demanding showing [of] a purpose to harm [decedent] for reasons unrelated to legitimate law enforcement objectives." *Id.*

Here, Defendant Samayoa had plenty of time to deliberate because all he had to do was simply get out of his car and chase after Keita. He was never forced to make a decision to shoot in a few seconds, because he was not supposed to shoot at all. For example, Defendant Talusan, who sat within feet of Defendant Samayoa, testified he planned to simply get out of his car and chase Keita. Therefore, Plaintiff's claim for excessive force overlaps his Fourteenth Amendment claim and it should proceed. Furthermore, Defendant Samayoa is not entitled to Qualified Immunity for the same reasons he is not entitled to Qualified Immunity on Plaintiff's Fourth Amendment claim against him. *See Nunez v. City of San Jose*, 381 F.Supp.3d 1192 (N.D. 2019) (denying qualified immunity and permitting Fourteenth Amendment claim to proceed because a jury could find officers had time to deliberate before shooting a young man holding a gun on his front porch); *see Nieto v. City and County of San Francisco,* 2015 WL 7180609 (denying qualified immunity and permitting Fourteenth Amendment claim to proceed because a jury could find officers had time to deliberate before shooting a young man officers thought was pointing a gun at them).

POINTER & BUELNA, LLP
LAWYERS FOR THE PEOPLE
1901 Harrison St., Ste. 1140,
Oakland, CA 94612
Tel: (510) 929 - 5400

### F. PLAINTIFF'S NEGLIGENCE CLAIM MUST PROCEED

Similar to the Fourth Amendment analysis: "[P]ublic employees in California are statutorily liable to the same extent as private persons for injuries caused by their acts or omissions." *Hayes v. Cty. Of San Diego*, 57 Cal. 4th 622, 628-29 (2013). Thus, to support a negligence finding, a plaintiff must show that the defendant public employee had a duty to exercise due care, that he breached that duty, and that the breach was the proximate or legal cause of the resulting injury. *Id.* The California Supreme Court "has long recognized that peace officers have a duty to act reasonably when using deadly force." *Id.* at 629. And "[t]he reasonableness of an officer's conduct is determined in light of the totality of the circumstances." *Id.* "In police cases, as well as others, the conduct in question 'must always be gauged in relation to all the other material circumstances surrounding it and if such other circumstances admit of a reasonable doubt as to whether such questioned conduct falls within or without the bounds of ordinary care such doubt must be resolved as a matter of fact rather than of law." *Young Han v. City of Folsom*, 695 F. App'x 197, 198-99 (9th Cir. 2017) (quoting *Grudt v. City of Los Angeles*, 86 Cal. Rptr. 465, 468 (1970)). For the same reasons Plaintiff's excessive force claim should proceed, Plaintiff's negligence claim should proceed.

### G. DEFENDANTS CLAIMED STATE IMMUNITIES DO NOT APPLY

Defendant City and County of San Francisco has argued many times before and district courts have consistently denied the applicability of the purported state privileges under California Penal Code § 196, § 821.6, and § 820.6.

However, in Defendants own words, under California Penal Code § 196 "the test for that privilege is the same as that governing the reasonableness of deadly force under the Fourth Amendment" (Doc. 147 – Def Mtn., pp. 25-26). For the same reasons, Defendants are liable under the Fourth Amendment and cannot be afforded that privilege here.

POINTER & BUELNA, LLP
LAWYERS FOR THE PEOPLE
1901 Harrison St., Ste. 1140,
Oakland, CA 94612
Tel: (510) 929 - 5400

For § 820.6, Defendants argue that they are entitled to the "good faith" immunity but this would require the resolution of several factual disputes and a jury could easily conclude that both officers *did not* act in good faith. *See Woods v. CCSF*, Case 3:15-cv-05666-WHO at Doc. 146 (N.D. Nov. 8, 2019) (denying Defendant CCSF assertion of state privileges § 196, § 821.6, and § 820.6 when a jury could conclude that the officers used unreasonable force and did not act with good faith).

For § 821.6, as the district court has already reminded Defendant CCSF several times, the immunity is for *investigations,* not conduct during an arrest. (Id.); *see also Blankenhorn v. City of Orange*, 485 F.3d 463, 488 (9th Cir. 2007) (concluding that section 821.6 did not immunize conduct that occurred during an arrest rather than an investigation); *Chien Van Bui v. City & Cty. of San Francisco*, 61 F. Supp. 3d 877, 905 (N.D. Cal. 2014) (same) (reversed in part on other grounds); *Via v. City of Fairfield*, 833 F. Supp. 2d 1189, 1200 n. 9 (E.D. Cal. 2011) ("The immunity section 821.6 affords does not extend to causes of action based on an officer's use of force during an arrest.").

Finally, Defendant City claims that it cannot be held vicariously liable because Plaintiff cannot identify a specific statutory basis for liability that indicates Defendant City is liable and cites to *Eastburn v. Regional Fire Protection Authority*, 31 Cal. 4th 1175, 1183 (2002), *Miklosy v. Regents of the University of California*, 44 Cal. 4th 876, 899 (2008) and *Sipple v. City of Hayward*, 225 Cal. App. 4th 349, 362 (2014). However, Plaintiff identified that Defendant City specifically "is vicariously liable for the wrongful acts and omissions of its employees and agents pursuant to Cal. Gov. Code section 815.2" throughout her operative complaint. (Pltf SAC, ¶ 49).

## H. PLAINTIFF'S BANE ACT CLAIM MUST PROCEED

The Tom Bane Civil Rights Act (Section 52.1) civilly protects individuals from all conduct aimed at interfering with rights that are secured by federal or state law where the interference is carried out "by threats, intimidation or coercion." *Venegas v. County of Los Angeles* (2007) 153 Cal. App. 4th

1230, 1242. Claims under section 52.1 may be brought against public officials who are alleged to have interfered with protected rights, including police officers. *Simmons v. Superior Court* (2016) 7 Cal.App.5th 1113.

The *Cornell* Court found the "threat, intimidation or coercion" element of the claim **does not** have to be "transactionally independent" from the constitutional violation alleged, and found that the "the egregiousness required by Section 52.1 is tested by whether the circumstances indicate the [defendant] had a specific intent to violate the [plaintiff's civil rights], not by whether the evidence shows something beyond the coercion 'inherent' in the [violation]." *Cornell v. CCSF,* 17 Cal.App.5th 766 at 801-802 (Ct. App. 2017).

The *Cornell* Court explained that the application of the "specific intent standard is straightforward" and contains two requirements: 1) a purely legal question (for the court) of whether the right at issue is clearly delineated and plainly applicable under the circumstances, and 2) the purely factual question (for the jury) of whether the defendant committed the act in question with the particular purpose of depriving the citizen victim of his enjoyment of the interests protected by that right. (*Id.*, at 803.) "If both requirements are met, even if the defendant did not in fact recognize the [unlawfulness] of his act, he will be adjudged as a matter of law to have acted [with the requisite specific intent]—i.e., 'in **reckless disregard** of constitutional [or statutory] prohibitions or guarantees.'" (Id. at 766 (quoting *People v. Lashley* (1991) 1 Cal.App.4th 938, 948–949).

In the context of an unreasonable use of force case, the jury must find that the Defendants 'intended not only to use the force, but its unreasonableness, its character is 'more than necessary under the circumstances.'" (*Reese v. County of Sacramento*, (9th Cir. 2018) 888 F.3d 1030, at 1045.) Here, Defendants shot and killed an unarmed, fleeing and nonviolent man for no legitimate reason, in

POINTER & BUELNA, LLP
LAWYERS FOR THE PEOPLE
1901 Harrison St., Ste. 1140,
Oakland, CA 94612
Tel: (510) 929 - 5400

violation of decades of civil rights law and in complete and utter disregard for Keita's constitutional right to be free from unreasonable force.  Therefore, Plaintiff's Bane Act claim must proceed.

## IV.     CONCLUSION

For the aforementioned reasons, Plaintiff respectfully requests this Court DENY Defendants' Motion for Summary Judgment.

Dated: June 4, 2021                **POINTER & BUELNA, LLP**

**LAWYERS FOR THE PEOPLE**

By: *_/s/Patrick M. Buelna_*
        PATRICK M. BUELNA
        Attorney for Plaintiff

POINTER & BUELNA, LLP
LAWYERS FOR THE PEOPLE
1901 Harrison St., Ste. 1140,
Oakland, CA 94612
Tel: (510) 929 - 5400